Again:

---

In re MARX et al.

(District Court, D. Kentucky. June 23, 1900.)

1. BANKRUPTCY—DISCHARGE—BOOKS OF ACCOUNT—FRAUDULENT BOOKKEEPING.
    Under Bankr. Act 1898, § 14, providing that a bankrupt shall not be entitled to a discharge if, with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, he has failed to keep books of account from which his true condition may be ascertained, a discharge will not be denied upon such ground where it appears that most of the bookkeeping in question was done before the bankrupt law was enacted, and it is not shown that it was in contemplation of bankruptcy.

2. SAME—FALSE OATHS IN EXAMINATION OF BANKRUPT.
    Knowingly and fraudulently making false oaths by a bankrupt in an examination under Bankr. Act 1898, § 7, requiring the bankrupt to submit to an examination concerning the conduct of his business and the cause of his bankruptcy, but providing that no testimony given by him on such examination shall be offered in evidence against him in any criminal proceeding, is not a ground for denying the bankrupt a discharge under sections 14 and 29 of the act, punishing the making of a false oath in, or

in relation to, any proceeding in bankruptcy, and providing that a bankrupt shall not be entitled to a discharge if he has committed an offense punishable by imprisonment as therein provided.

Kohn, Baird & Spindle, for bankrupts.

D. I. Heyman, for objecting creditors.

EVANS, District Judge. Upon the petition of certain of their creditors, this firm and its members were adjudged to be bankrupts. Afterwards, at the meetings of their creditors, they submitted to examination pursuant to section 7 of the bankrupt act. Their petitions for discharge were afterwards met with objections from the creditors, who specified reasons for opposing that relief. Those reasons, for the purposes of this case, may be said to embrace two general grounds of objection, namely: First, under section 14, that the bankrupts, with fraudulent intent to conceal their true financial condition, and in contemplation of bankruptcy, failed to keep books of account or records from which their true condition might be ascertained; and, second, under section 14, coupled with section 29, that the bankrupts had committed offenses punishable under the act, by knowingly and fraudulently making certain false oaths in the examinations referred to. Relative to each of these grounds of objection, it may be stated that no testimony was offered by either party after the specifications were filed on February 26, 1900, when the case was referred to the referee to ascertain and report the facts. The only evidence offered or considered by the referee on the reference, or by the court on this hearing, was what was contained in the examinations of the bankrupts themselves, and those of Moses F. Marks, John J. Saunders, and Thomas E. Turner, all of which were had, for some purpose, before the specifications of objections to the discharge were filed. It is contended by the bankrupts that this previously taken evidence is not competent to be considered upon the issues raised by the petitions for discharge, and the specified objections thereto. This might possibly raise a serious and doubtful question, but, in the view the court takes of the case, it is not necessary to pass on it, although it may be that what we shall say upon section 7 of the act may be decisive of the question, as to parts of that testimony.

Section 14 of the act provides that the discharge shall be granted unless, among other things, the bankrupt, "with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed or failed to keep books of account or records from which his true condition might be ascertained." It appears to be essential that the failure to keep books by the bankrupt shall not only be with the fraudulent intent to conceal his true financial condition, but also that it shall be done "in contemplation of bankruptcy." There was a phrase similar to the last one in a former bankrupt law, and the supreme court, in Buckingham v. McLean, 13 How. 167, 14 L. Ed. 190, held that it did not mean insolvency, merely, but that it meant bankruptcy itself. Keeping this decision in view, it is impossible, upon the evidence in this case, to hold that the first ground of objection to the discharge of these bankrupts is sustained. Whatever the intent, if any, in badly keeping their books, it does not appear

to have been in contemplation of any bankruptcy, or act of bankruptcy, upon their part. Indeed, most of it was done before the bankrupt law was enacted. Books were in fact kept, but by an inexperienced person in their employ, and did not show the "true financial condition" of the firm, if by that phrase is meant the exact state of its accounts and its assets, though they did plainly enough show that the firm was insolvent, if that only was meant by this language of the statute. There might be doubts raised as to whether the phrase "true financial condition" meant one or the other of those things, but we need not attempt to solve them.

Coming now to the second ground of objection to the discharge: Respecting this it will be seen that section 14, read in connection with clause 2 of section 29b, provides that a bankrupt shall be granted his discharge unless he has "committed an offense punishable," etc., by making a false oath in, or in relation to, the bankrupt proceedings. If the oaths alleged to have been false had been made in these proceedings in any other way than while the bankrupts were submitting to examination under the provisions of section 7 of the act, the legal questions would be clear enough, and we should have only to inquire whether the alleged false oaths were so made knowingly and fraudulently. Does the fact that these oaths were made while the bankrupts were being thus examined make the case different? While the bankrupts were compelled to undergo that examination, and while they did not, as they probably might have done, object to answering any incriminating questions, still the statute is express "that no testimony given by him shall be offered in evidence against him in any criminal proceeding." As will be seen from reading section 7, this refers to the testimony given by him when submitting to the required examination. As this makes it manifest that congress did not intend that this examination should be a trap set for the bankrupts, nor a basis for criminal proceedings against them, however useful for acquiring information as to assets, it seems to me that sound principles of construction require that this provision shall be read in as an exception to the general language of section 29b, cl. 2, of the act, so as to limit the operation of the provision to oaths made in or in relation to any proceeding in bankruptcy, except the examinations of the bankrupt allowed by section 7 of the act. Section 14 requires that the discharge shall be granted unless the bankrupt has "committed an offense punishable by imprisonment as herein provided," and the only offense charged to have been committed which is thus punishable is the alleged making of false oaths in the examinations before the referee. Inasmuch as what the bankrupts then swore cannot be introduced as testimony against them, it is, in legal contemplation, impossible for them to be punished for having committed the offense. If it is legally impossible for them to be convicted of an offense punishable under the act, it cannot be said or held that they have committed an offense punishable under its provisions. It being impossible to convict them, or to read against them what they have thus sworn, how can the charge be proved, that they have committed an offense punishable under the act? The true interpretation of all these provisions of the statute, when construed in pari materia, and giving effect to the **evident policy of** congress, must be that what is sworn by the bankrupt

at such examinations shall not be used as evidence against him personally at all, when attempting, either under an indictment or in opposing a discharge, to prove a criminal act on his part, and consequently that he is not punishable under the act for saying anything at such examinations, whether true or false. Otherwise, the protection tendered the bankrupt by section 7 would be unavailing, illusory, and of little, if any, value. It would certainly trench upon this exemption, and impair its value, to hold, somewhat contradictorily, that while the bankrupt could not possibly nor in fact be punished for so swearing, yet that what he had thus done was "punishable under the act." It therefore appears to be unnecessary to inquire whether what was sworn to was knowingly or fraudulently false.

Much in this record might otherwise lead us to conclude that these were not the sort of persons the act was intended to benefit; but, in view of what seems to be the law, and without attempting to say whether the facts alleged in the second ground of objection specified are proved or not, and without passing upon the questions raised by counsel, the court is of opinion that the discharges cannot be lawfully refused. It may be remarked, however, that the referee found that none of the specified grounds of objection to the discharges were sustained by the proof, except one as to one of the bankrupts. That one specification had reference alone to an alleged false oath in the examination referred to, and about a matter which may or may not have been important, according to developments that could only come from further proof, which is wanting. Let discharges be granted.