## In re BLALOCK.

(District Court, D. South Carolina. November 8, 1902.)

1. BANKRUPTS—DISCHARGE—GROUNDS FOR DENIAL.

Bankr. Act, § 14 [U. S. Comp. St. 1901, p. 3427], provides, as a ground for refusing to discharge a bankrupt, that he has "committed an offense punishable by imprisonment as herein provided." Section 29, subd. b (2) [U. S. Comp. St. 1901, p. 3433], provides for punishment by imprisonment if one "has made a false oath or account in, or relation to, any proceeding in bankruptcy." *Held*, that the making of a false oath by a bankrupt in a proceeding in bankruptcy, not against him, but against the corporation of which he was an officer and stockholder, was not ground for refusing his discharge.

2. SAME—SPECIFICATION IN OPPOSITION TO DISCHARGE—SUFFICIENCY.

The specification in opposition to the discharge of a bankrupt, for making a false oath, should aver that it was done "knowingly and fraudulently"; those words being used in Bankr. Act, §§ 14, 29 [U. S. Comp. St. 1901, pp. 3427, 3433], which, taken together, make that a ground for refusing a discharge.

3. SAME—FAILURE TO SCHEDULE ASSETS—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* not to warrant the court in refusing to discharge a bankrupt on the ground that at the time of his petition he was in the possession of certain funds which he had failed to schedule as part of his assets.

4. SAME—FRAUD.

Evidence examined, and *held* insufficient to show that a bankrupt "knowingly and fraudulently" omitted to schedule as a part of his assets his beneficial interest in certain policies of insurance, and therefore the omission was not ground for refusing his discharge.

5. SAME—INCORRECT ENTRY OF ASSETS.

The fact that a bankrupt in his schedule showed that he had a one-half interest in certain land, whereas he only held a life interest therein, was not ground for refusing his discharge, where he testified that he did not know exactly what his interest was.

6. SAME—SPECIFICATION IN OPPOSITION TO DISCHARGE—SUFFICIENCY.

A specification in opposition to the discharge of a bankrupt, which recites that he "has neglected to keep books and accounts showing his financial condition, * * * hence the true status of his affairs cannot be ascertained," states no offense within Bankr. Act, § 14 [U. S. Comp. St. 1901, p. 3427], which provides as one of the grounds for refusing the discharge that the bankrupt has, "with fraudulent intent to conceal his true financial condition, * * * destroyed, concealed, or failed to keep books of account."

7. SAME—GROUNDS FOR REFUSING DISCHARGE.

Omission of creditors from the schedule of a bankrupt is not ground for refusing his discharge.

8. SAME—SPECIFICATION IN OPPOSITION TO DISCHARGE—INDEFINITENESS.

A specification in opposition to the discharge of a bankrupt, which recited that he made "various contradictory statements" in a certain other bankruptcy case, naming it, "and also the case herein, and that he gave unsatisfactory and indefinite accounts of the proceeds of his crop for the year 1901, and reference is hereby craved to testimony taken in both of said cases," is bad for indefiniteness.

Ed. Johnstone, for bankrupt.
N. B. Dial, for creditors.

BRAWLEY, District Judge. Certain creditors of L. W. C. Blalock have filed specifications in opposition to his discharge. The first specification is in the words following:

"That heretofore, during the year 1902, the said L. W. C. Blalock, bankrupt, swore in the United States court at Charleston, S. C., before his honor, Judge W. H. Brawley, in proceedings in bankruptcy, relating to the Goldville Manufacturing Company, that he, the said Blalock, owned, in addition to other property, lots in the city of Newberry, and another tract of land in the edge of Laurens county, which was unincumbered, and that no such property appears in his list of assets filed in bankruptcy proceedings by himself."

It appears that, in testimony taken before me in a case wherein certain petitioners sought to have the Goldville Manufacturing Company adjudicated a bankrupt in involuntary proceedings, L. W. C. Blalock, an officer and a large stockholder in said company, was a witness, and certain claims being presented against said company, which denied its insolvency, were contested by the attorneys for the corporation on the ground that they were not debts of the corporation, but were debts of L. W. C. Blalock and J. S. Blalock, who, as partners, had been conducting business under the name of the Goldville Manufacturing Company, before the corporation was organized, and it was pertinent to that inquiry whether said L. W. C. Blalock and J. S. Blalock were solvent; for, if so, the claims which were primarily obligations of the said Blalocks should not be considered in determining the amount of indebtedness of the corporation, and it was upon that inquiry that the alleged false oath was made. Subsequent to that date L. W. C. Blalock filed his petition in bankruptcy, and the schedule of his assets did not include any lands in the city of Newberry, and it now appears that he owned no such lands. He did at one time own some property there, but it had been sold prior to the time when he was examined. The question for decision is whether the making of the oath in those proceedings, assuming it to be false, is a ground for refusing a discharge. One of the grounds enumerated in section 14 [U. S. Comp. St. 1901, p. 3427] for a refusal of a discharge of the applicant is that he has "committed an offense punishable by imprisonment, as herein provided." Section 29 [U. S. Comp. St. 1901, p. 3433] enumerates the offenses punishable by imprisonment, and subdivision b (2) provides for the punishment by imprisonment if one has "made a false oath or account in, or in relation to, any proceeding in bankruptcy." The ground of objection to a discharge under this specification is not that the bankrupt has concealed assets which should have been enumerated in the schedule, for it appears to be conceded that he did not own the property described, and the simple question is whether a false oath made in another proceeding furnishes ground for a refusal to discharge. I am of opinion that it does not. It is true that the proceeding in which the alleged false oath was made was a proceeding in bankruptcy, but it was not a proceeding in this case. It was held in Re Marx, 4 Am. Bankr. R., 522, 102 Fed. 676, that the "false oath" as a ground for refusal of a discharge could not be predicated upon an examination of the bankrupt, under section 7 [U. S. Comp. St. 1901, p. 3425], prior to the specifications in opposition to discharge

being filed, inasmuch as that section in terms provided "that no testimony given by him shall be offered in evidence against him in any criminal proceedings," and therefore that was not an offense punishable by imprisonment, as specified in section 14 [U. S. Comp. St. 1901, p. 3427]. And the same ruling was made in Re Logan, reported in the same volume. The present case does not require any opinion as to these rulings, but it seems to me clear that it was not the intent of the statute to make any misconduct prior to his adjudication in bankruptcy a ground for refusal to discharge. The "proceeding in bankruptcy" therein referred to must be limited to some proceedings in the case of bankruptcy now before the court. The specification is defective in failing to charge that the offense specified was committed "knowingly and fraudulently," and, while it may not be necessary to require specifications in opposition to discharge to be framed as strictly as is required in a criminal indictment, yet when the statute in its terms defines what shall be ground for refusal, and uses the words "knowingly and fraudulently" in describing the offense, the specifications should have followed the words of the statute.

The second specification is in the words following

"That in proceedings in this case before R. H. Welch, Esq., referee, the said Blalock testified that he leased his plantation in Laurens county, in said state, for the year 1902, and that he hypothecated a contract for said rent with G. W. Childs as collateral, and had drawn money from time to time, some of which was at least collected since he filed his petition in bankruptcy in this case, and that he did not schedule either the contract or proceeds thereof."

The bankrupt has been examined before me on this specification, and testified that he did "hypothecate his contract for rent, as charged," but he testifies that at the time when his petition was filed he had spent the money received from Childs, and that he had borrowed other money from his sister to pay his expenses, and that he did not have any money at that time belonging to his estate, and at the time of the examination before the referee he had only $6, the greater part of which he had to pay out for his hotel bill. The proof under this specification is insufficient to justify me in withholding the discharge on the ground that he was in possession of funds at the time he filed his petition which he failed to put in his schedule.

The third specification is that "he failed to make a true inventory of his assets, in that it appears that he has an interest in a large number of policies held upon his father's life, and no such assets appear upon his schedules." The testimony shows that his father, J. S. Blalock, had insured his life for the benefit of L. W. C. Blalock, the bankrupt, and his sister, and that the bankrupt arranged to keep these policies alive by borrowing their paid-up value, and also by borrowing some money from his sister to pay the premiums as they fell due. Unquestionably they should have been included in his schedule of assets, but the bankrupt's attorney, Mr. Johnstone, stated upon the hearing that the bankrupt had referred to these policies of insurance when he was about to prepare his petition in bankruptcy, and that he was of the impression that the policies of insurance need not be scheduled as part of the bankrupt's estate. He further stated that, being under

engagements at that time which prevented his personal attention to the preparation of the schedules, he requested his partner to prepare the schedules, and the bankrupt testified that the subject of these policies was mentioned to Mr. Johnstone's partner, and, as the interest of the bankrupt therein seemed to be of little or no value, they were omitted. I am of opinion that the proof is not sufficient to show that these policies were "knowingly and fraudulently" omitted from the schedule. The trustee in bankruptcy should be directed to take such steps as may be necessary to obtain for the bankrupt's estate whatever of value there is in these policies to which the bankrupt is entitled, be it much or little.

The fourth specification is that "upon the schedules which he filed in the case he shows that he had one-half interest in certain lands aggregating something like six hundred acres, whereas he only held a life interest therein." There does not appear to be anything in this specification to justify the withholding of the discharge. The bankrupt has testified that he did not know exactly what his interest was in these lands. As they are enumerated in his schedule, the estate will have the benefit of his interest, whatever it may be.

The fifth specification is in these words: "That the said Blalock has neglected to keep books and accounts showing his financial condition, both before and since the filing of his application to be adjudged a bankrupt in this cause; hence the true status of his affairs cannot be ascertained." The neglect to keep books and accounts showing his financial condition is not a ground for refusal to discharge, and the specification does not charge properly any offense under the bankrupt law. One of the grounds for refusal to discharge under section 14 [U. S. Comp. St. 1901, p. 3427] is that the bankrupt, "with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or record from which his true condition might be ascertained." The specification charges no offense, and therefore requires no consideration.

The sixth specification is that "in the first schedule filed by said Blalock he omitted the names of a large number of creditors, and that after he was examined he filed a second schedule, adding thereto the names of a large number of merchants, including Johnstone, Crews & Co., C. Wulbern & Co., and others." It appears from the statement made by one of the counsel for the bankrupt upon the hearing that there was a question as to whether the creditors referred to were the creditors of Blalock personally, or of the Goldville Manufacturing Company, and that after the schedule was filed by the bankrupt he thought proper to amend the schedule by enumerating the parties named as creditors of the bankrupt. The ground for refusal to discharge under the present bankrupt law are limited in number. They specify what shall be the causes for such refusal, and the omission of creditors from the schedule is not enumerated as one of the grounds. There is nothing of substance in this specification.

The seventh specification is "that said Blalock made various contradictory statements in the Goldville Manufacturing Company's case, and also the case herein, and that he gave unsatisfactory and in-

definite accounts of the proceeds of his crop for the year 1901, and reference is hereby craved to testimony taken in both of said cases." This is a vague and unsatisfactory specification. If the objectors wish to charge that the bankrupt has concealed his assets, they should have done so in precise terms. The court is required to discharge the bankrupt unless there is clear and convincing proof of the commission or omission of some act which the law prescribes as a ground for withholding discharge.

Upon the whole case, I am not satisfied that there is any good ground under the law for refusing a discharge, and it will be granted.