In re LESLIE.

(District Court, N. D. New York. January 3, 1903.)

**1. BANKRUPTCY—CONCEALING PROPERTY—EVIDENCE—SUFFICIENCY.**

The mere fact that there was a shrinkage of $12,000 in the assets of a bankrupt within a year of his failure was not sufficient proof that he had that amount of property and concealed it from his creditors and the trustee, when his petition in bankruptcy was filed.

**2. WITNESSES—CREDIBILITY.**

A witness may be as thoroughly discredited by the inherent improbabilities of his testimony as by the direct testimony of other witnesses.

**3. BANKRUPTCY—APPLICATION FOR DISCHARGE—BURDEN OF PROOF.**

Where on an application for the discharge of a bankrupt, it was shown that he had received money after the filing of the petition, and without the authority of the trustee, and the disposition of such money was not disclosed, the burden of proving that it was paid over to the trustee was on the bankrupt.

**4. SAME—TESTIMONY AT CREDITORS' MEETINGS—ADMISSIBILITY.**

By Bankr. Act, § 7a, subd. 1 [U. S. Comp. St. 1901, p. 3424], the bankrupt is directed to "attend the first meeting of his creditors" and (subdivision 9 [U. S. Comp. St. 1901, p. 3425]) "when present * * * and at such other times as the court shall order, submit to an examination concerning * * * matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding." *Held* that, though the testimony so given by the bankrupt proved a fraudulent concealment of property by him, it could nevertheless be used to defeat his application for discharge.

**5. SAME—GROUND FOR REFUSING DISCHARGE.**

If a bankrupt willfully and fraudulently conceals any of his property from the trustee, he is not entitled to a discharge.

**6. SAME—PREPONDERANCE OF EVIDENCE.**

A fair preponderance of the credible evidence is all that is needed to show a fraudulent concealment of property by a bankrupt, so as to defeat his discharge.

**7. SAME—EVASIVE ANSWERS BY BANKRUPT.**

While evasive and disingenuous testimony by a bankrupt is not a ground for refusing a discharge, it is a material consideration in determining his credibility when testifying as to what became of certain money.

**8. SAME—EVIDENCE—SUFFICIENCY.**

Evidence in an application for the discharge of a bankrupt examined, and *held* to show that certain money received by him after the filing of the petition had not been paid to the trustee.

This is an application to confirm the report of the special master to whom this matter was referred on the application of the bankrupt for a discharge. The special master has reported in favor of granting the discharge, and the question is, shall the report be confirmed, and the discharge granted?

White, Cheney & Shinaman, for bankrupt.
Benjamin Stolz, for opposing creditors.

RAY, District Judge. On or about October 1, 1900, the bankrupt filed his petition and schedules in bankruptcy. The schedules contained a list of his liabilities and an inventory of his assets. At the

¶ 5. See Bankruptcy, vol. 6, Cent. Dig. § 735.

first meeting of the creditors a trustee was elected, and he proceeded, as the evidence shows, to perform the duties of his office in a very loose and unsatisfactory manner. The bankrupt himself seems to have conducted his business in a very loose and unsatisfactory manner. The opposing creditors allege, and the petition and schedules of the bankrupt, with other evidence, demonstrate, that within a year of the failure of Leslie there was a shrinkage in his assets of at least $12,000. From this fact the creditors claim that the court is justified in finding and holding that the bankrupt had that amount of property at the time of his failure, and has concealed the same from his creditors and from the trustee. The bankrupt does not explain or attempt to explain this shrinkage. His mode and manner of living are not shown. There is no pretense that he met with serious losses. The naked fact stands that there was a shrinkage in his assets of about $12,000 within the time mentioned. It may be that the bankrupt had this money at the time of his failure, but there is no proof of the fact. He may have wasted the same in riotous and extravagant living or in gambling. The case is bare of proof on this question. The referee was justified in holding that there was no sufficient proof that the bankrupt had this amount of money at the time of his failure.

But a more serious question is presented from the evidence. It is alleged and shown that the bankrupt had in his employ at the time of his failure a person who was selling goods for himself or the bankrupt, and paying therefor to the bankrupt. It is immaterial how that fact was. At the time of the failure, and at the time of filing the petition in bankruptcy, at least $113 was owing to the bankrupt, either from the persons who had had the goods, or from the salesman who made the sales. This salesman or agent, whichever he may be called, collected the money and turned it over to the book-keeper of the bankrupt; and she, in turn, paid it to the bankrupt after he had filed his petition in bankruptcy, and at about the time the trustee was appointed. It is claimed that the bankrupt did not turn this money over to the trustee, and that the trustee never accounted for it. On the hearing before the special master the bankrupt testified that he did turn this money over to the trustee, but he says that he cannot tell the time or place when he paid it over, or the circumstances under which the payment was made. He took no receipt. One witness testifies, in substance, that he was requested by the bankrupt not to say anything about this money. The trustee says that the money was paid over to him by the bankrupt, but he gave no receipt, and is unable to tell when or where the money was paid to him. He did not deposit it as a separate or distinct item, nor does he pretend that he deposited it at the time he received it. He claims that he took it to his office, and that it was put in the drawer of a clerk in the office, and remained there for several days, and that in the meantime he was making collections, and finally sold the whole stock, and that the money was all deposited in a lump sum. The trustee also testifies that he kept no book of account, but did keep some loose memoranda on slips of paper, and that these memoranda have all been lost or destroyed. When, where, or how such

loss occurred, is not explained. The law partner of the trustee was not sworn, nor were the clerks in the office. At one time the trustee testified, and his accounts show certain collections of certain accounts. If that testimony was true, and he collected accounts to the amount he said he did, then he never received this $113 from the bankrupt, or, if he did, he never accounted for it or deposited it in the bank, as it was his duty to do. The special master evinced a disinclination to accept this statement of the bankrupt and of the trustee, but, as it was not contradicted directly, appears to have felt himself bound to accept the statement. A witness may be as thoroughly discredited by the inherent improbabilities of his testimony as by the direct testimony of witnesses. This court is not inclined to believe, and does not believe, on the evidence now produced, that this money was ever turned over by the bankrupt to the trustee. It is satisfied from the evidence now before it that the bankrupt and the trustee were in collusion. It may be, however, that the testimony of the law partner of the trustee and of his clerks, if they are called as witnesses, will be of such a nature as to convince this court that the money was paid over to the trustee as alleged. It seems incredible that an officer of this court, receiving that amount of money belonging to the creditors of this bankrupt estate, would allow it to lie around loose in his office in the manner described. If, however, it shall appear that this was the manner of doing business in that office, the court may be compelled to accept the statements of the witnesses; but it will not accept the evidence now before the court, or believe that such a loose manner of conducting business prevailed, or that the trustee was guilty of such gross violations of duty as the evidence and his own confessions, unexplained, establish, when given to secure a discharge for the bankrupt, and after the trustee has been discharged. The fact that this bankrupt received this money after his petition was filed, without authority of the trustee, which he had no right to do, being conceded, and its disposition not being disclosed, the burden of proof so far shifted that it was incumbent on him to establish by credible evidence that he paid it over to the trustee. Asher v. Bank, 7 Alb. Law J. 43; Heinemann v. Heard, 62 N. Y. 448; Eichhold v. Tiffany, 20 Misc. Rep. 680, 46 N. Y. Supp. 534; Whitlatch v. Casualty Co., 149 N. Y. 50, 43 N. E. 405. This is the only transaction of the kind connected with that estate, and it is not credible that intelligent men have forgotten where or about when the payment of that money took place.

Again, in his report, the trustee says:

"From the time of the acceptance of my trust herein to the date of sale, I made strenuous efforts through my attorney, to collect in the outstanding accounts due and owing the bankrupt estate, and did succeed in collecting, after having sent out in the neighborhood of 800 letters, the sum of $151.81."

Here is a plain statement that the trustee, as the result of strenuous effort through his attorney, collected on these accounts $151.81 after sending 800 letters. No suggestion that $113 of this sum was voluntarily paid in to the bankrupt before the appointment of the trustee, and prior to the sending of letters, and was speedily paid over, without any effort, "strenuous" or otherwise,—certainly not through

the efforts of his attorney. Is it true, in the face of this statement, that the trustee collected, through these strenuous efforts made through his attorney, only $38.81 on accounts?

Again, in the summary this trustee reports the amount received on the lump sale of the stocks of goods at $3,002.90. Then, "Cash received from D. Y. Leslie, balance on hand at the time of filing the petition," $4.63. If the trustee received $113 cash in addition from D. Y. Leslie, why did he not so state?

| | |
|---|---:|
| This trustee reports that in selling those goods in a lump sum for... | $3,002 90 |
| Receiving from the bankrupt, cash.................................... | 4 63 |
| Receiving from the bankrupt without any effort, if he did get that money from him.......................'............................... | 113 00 |
| Collecting on accounts.............................................. | 38 81 |
| And receiving on canceled insurance policies........................ | 27 96 |
| Total ................................................. | $3,187 30 |

—He expended the sum of $834.03. These facts should be considered seriously before giving the testimony of the bankrupt and this trustee full faith and credit.

Again, it has been urged that the evidence given by the bankrupt on his examination at the meetings of his creditors, and pursuant to the order of the court, cannot be used against him to defeat his discharge. No well-considered case has ever held such a doctrine. In re Marx, 4 Am. Bankr. R. 521, 102 Fed. 676, and In re Logan, 4 Am. Bankr. R. 525, 102 Fed. 876, have not been followed. They are expressly overruled in this circuit. In re Gaylord, 112 Fed. 668, 50 C. C. A. 415. By section 7a, subd. 1 [U. S. Comp. St. 1901, p. 3424], the bankrupt is required to—

"Attend the first meeting of his creditors if directed by the court or a judge thereof to do so, and the hearing upon his application for a discharge if filed, * * * and (subdivision 9 [U. S. Comp. St. 1901, p. 3425]) when present at the first meeting of his creditors and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding."

This last clause was not written into the law as an encouragement to, or as a premium on, perjury. Nor was it placed there to license the bankrupt as a liar in the proceedings, and protect him from the consequences of his misstatements when he comes to apply for his discharge. The evidence cannot be used against him in any criminal proceeding. This is all. The proceedings on his application for a discharge are not criminal proceedings, or even criminal in their nature, like an action to recover a penalty or impose and enforce a forfeiture, but simply a civil proceeding instituted and being prosecuted by the bankrupt for a discharge from his debts; and, if the opposing creditors can show in such civil proceeding that the petitioner has committed any of the offenses mentioned in the bankruptcy act, the proceeding fails, and the discharge must be denied. No penalty or forfeiture is imposed, and no punishment follows. A discharge is not a matter of right, nor is its refusal the imposition of a penalty or a

forfeiture. The opposing creditors may show that the petitioning bankrupt has been guilty of the acts mentioned, by his admissions or statements made at any time. If, on the hearing at a time directed by the court, he admits under oath that he has willfully and fraudulently concealed his property from his trustee, that admission may be given in evidence against him on the hearing of his application for a discharge; but it cannot be made the basis of, or used against him on, a criminal charge and prosecution. A "criminal proceeding" is an action instituted and prosecuted by the state or sovereign power in its own name against a person who is accused of a crime, to punish him therefor. See Cent. Dict. tit. "Action"; Abb. Law Dict. tits. "Criminal Action" and "Criminal Case"; also "Civil Case."

"Criminal Action or Prosecution. A suit instituted for the enforcement of penal law, to secure the conviction and punishment of an offender. 'Prosecution,' alone, when used in the sense of a legal proceeding, and in ordinary context, sufficiently indicates that a proceeding for crime is intended, without a prefix of the word 'criminal.' See, also, 'Civil Action.'
"Criminal Case. An action, suit, or cause instituted to secure conviction and punishment for a crime. See 'Case.'
"Criminal cases are those which involve a wrong or injury done to the republic, for the punishment of which the offender is prosecuted in the name of the whole people. Grimball v. Ross, T. U. P. Charlt. 175."

A. sues in replevin for a horse, and shows prior possession as evidence of ownership. The defendant shows as a defense that the plaintiff obtained the horse feloniously, and never had any other possession. Is this a criminal proceeding? Clearly not. A civil action does not become a criminal proceeding because it becomes necessary for a party to prove that his opponent has committed a crime. No one is being prosecuted or proceeded against criminally. Hence the evidence given by the bankrupt may be given in evidence, if pertinent to an issue framed by the specifications of objections, on the hearing of the application for a discharge, either as an admission or in contradiction of his testimony given on such hearing.

The main purpose of the bankrupt law is to prevent preferences, and secure a fair and an equitable division of the bankrupt estate among the creditors, not to grant discharges. This end accomplished, the bankrupt is granted a discharge from all his debts. The attainment of the first is not to be sacrificed to the accomplishment of the last. If he willfully and fraudulently conceals any of his property from the trustee, he is not entitled to a discharge. The discharge is not denied as a penalty or a forfeiture because of the offense. The debtor has not performed one of the conditions precedent to obtaining a discharge from his debts. It is not necessary to establish this concealment of assets beyond a reasonable doubt, but by a fair preponderance of credible evidence only. The evidence must be satisfactory. In re Gaylord, 112 Fed. 668, 50 C. C. A. 415; Ferry Co. v. Moore, 18 Abb. N. C. 106, 102 N. Y. 667, 6 N. E. 293; Wright v. Grant, 6 N. Y. St. Rep. 362; Davis v. Railroad Co., 56 Hun, 372, 10 N. Y. Supp. 460. Where the objecting creditors have made a prima facie case, the burden is on the bankrupt to so weaken it by credible evidence as to present a question of fact. Such is this case, and, when it was conclusively established that Leslie had this money after he filed

his petition, and the assignee's account failed to show its receipt by him, it was incumbent on the bankrupt to show by credible evidence that he paid it over to the trustee. This has not been done. Courts are not compelled to accept the bald statements of interested witnesses, or of any witness when his statements are laden with inconsistencies, or burdened with inherent improbabilities, or discredited by incriminating confessions. It is not probable this bankrupt was receiving and paying out so much money to divers individuals at this time that he fails to recollect any of the particulars of this alleged transaction with the trustee.

There is much in the evidence of this bankrupt displaying such gross ignorance, real or pretended, of his business affairs, that the court is justified in holding that his evidence is not entitled to credit on either of two grounds: First, such want of knowledge, memory, and intelligence as to make his testimony unreliable; or, secondly, such an unwillingness to disclose the truth as to wholly discredit him. His statements are destitute of those elements which command confidence and justify judgment based thereon. Remembering that in such a case as this, where two inferences may be drawn, one consistent with innocence, and the other pointing in the opposite direction, the court is bound to draw the first, still in this case it is impossible to draw any inference consistent with fair and honest dealing. The evasive and disingenuous testimony of the bankrupt is not a ground for refusing a discharge. In re Gaylord, 112 Fed. 669, 50 C. C. A. 415. But it is a most material consideration in determining his credibility when testifying this money was paid to the trustee. The presumption of innocence, even in a civil case, prevails until overcome by evidence; but, when overcome by the evidence of the witness himself or by testimony, it fails to have weight.

For these reasons, an order will be entered referring this matter back to Mr. Stone, with directions to take such pertinent and legal evidence as may be offered by either party, and with particular instructions to ascertain the facts as to the whereabouts of this $113, and to obtain a copy of the bank account and deposit slips of this trustee.