In re Robert T. CARTER and Teresa A. Carter, Debtors.

Mary Christine MICOZ, David A. Lott II, Tamara L. Lott, and Gordon Konold, Plaintiffs,

v.

Robert T. CARTER and Teresa A. Carter, Defendants.

Bankruptcy No. 90C–01042.
Adv. No. 90PC–0332.

United States Bankruptcy Court,
D. Utah.

Feb. 13, 1991.

Thomas J. Scribner, Watson, Scribner & Burrows, Provo, Utah, for plaintiffs.

Donald E. Elkins, Provo, Utah, for debtors.

## MEMORANDUM OPINION

GLEN E. CLARK, Chief Judge.

The matter presently before the court is a motion by the plaintiffs, Mary Christine Micoz, David A. Lott II, Tamara L. Lott, and Gordon Konold ("plaintiffs"), seeking a default judgment against the debtors, Robert T. Carter and Teresa A. Carter ("debtors"), in the above-captioned adversary proceeding. A default certificate was executed by the clerk on July 26, 1990, and a hearing on the matter was had on September 5, 1990. Thomas J. Scribner, Esq. appeared on behalf of the plaintiffs. The debtors did not appear nor did their attorney of record, Donald E. Elkins, Esq. At the hearing, the court requested that plaintiffs' counsel submit a memorandum to address the issue of whether a false oath made by the debtors in a previous Chapter 7 case may serve as a basis for denying their discharge in the present case under 11 U.S.C. § 727(a)(4)(A). Upon submission of plaintiffs' memorandum, the court discovered that the September hearing had not been properly noticed to the debtors. Accordingly, the court directed Mr. Scribner to notice a new hearing on the motion for a default judgment. That hearing was had on February 5, 1991. The debtors appeared; however, their attorney did not. The court has considered the arguments of plaintiffs' counsel, the memorandum submitted by the plaintiffs, and has made an independent review of the record and the pertinent authorities. Now being fully advised, the court renders the following decision DENYING the plaintiffs' motion for a default judgment.

## FACTS

According to the plaintiffs' complaint, on or about November 1, 1988, the debtors and the Lotts executed an agreement in which the Lotts agreed to sell their Orem home to the debtors. (Complaint ¶ 7). The other two plaintiffs, namely Micoz and Konold, are note holders with liens against the property. (Complaint ¶ 1; Transcript 9/5/90 at 7–8). By the terms of the agreement, the debtors agreed to pay the Lotts $4,820.00 and to assume the outstanding obligations to Micoz, Konold, and the FHA. (Complaint ¶ 8; Exhibit A; Transcript 9/5/90 at 7–8). The debtors also paid the Lotts a down payment of $680.00. (Complaint ¶ 9; Transcript 9/5/90 at 9).

Prior to signing the agreement, the Lotts allege that they specifically asked the debtors if their finances were in order. (Complaint ¶ 11; Transcript 9/5/90 at 8). The debtors responded that, with the exception of a contested medical bill, they did not have financial problems. (Complaint ¶ 11; Transcript 9/5/90 at 8). On the basis of that representation, the Lotts maintain that they agreed to sell their home to the debtors. (Complaint ¶ 12). The closing on the home took place on or about November 28, 1988. (Complaint ¶ 16).

The Lotts allege that the debtors were consulting with a bankruptcy attorney at the same time that they were assuring them that they did not have financial problems. (Complaint ¶ 10). In fact, the debtors filed a petition for relief under Chapter 13 of the Code on November 22, 1988, several days prior to the closing on the home. (Case No. 88C–06881). That case was thereafter converted to a case under Chapter 7, and it was ultimately dismissed on February 9, 1990. The plaintiffs claim that they did not learn about that bankruptcy case until Mr. Lott confronted the debtors in late December, 1989, or early

January, 1990, to ask them why they were in default under the agreement. (Transcript 9/5/90 at 11–12). At the September 5, 1990, hearing, David Lott testified that during that confrontation, Mrs. Carter informed him that she and her husband intentionally had not informed the plaintiffs of the bankruptcy under the advice of their attorney, Kent O. Willis, Esq. (Transcript 9/5/90 at 12–13). According to Mr. Lott, Mrs. Carter told him that they were involved in a scheme that had been devised by Mr. Willis whereby they were to find a home that was listed for sale on which they could put a small down payment and assume the mortgage without qualifying. (*Id.*) As part of the scheme, the debtors were not to tell the sellers that they were planning to file a bankruptcy petition and not to list the property that was purchased in their bankruptcy schedules. (*Id.*) The debtors were instructed to execute the sale prior to filing bankruptcy and then to close the deal after they had filed. (*Id.*)

A review of the file in case No. 88C–06881 reveals that the plaintiffs were not named as creditors and the debtors' interest in the Orem property was not disclosed. On February 16, 1990, several days after the dismissal of their first case and prior to the closing of that case, the debtors filed the instant Chapter 7 case. The plaintiffs are listed as creditors in this case and the debtors' interest in the Orem property has been disclosed.

The plaintiffs filed the present adversary complaint on May 18, 1990. The compliant seeks relief, in relevant part, under 11 U.S.C. § 727(a)(4)(A).

## DISCUSSION

■ The uncontroverted evidence establishes that the debtors knowingly and intentionally made a material omission in their sworn statement and schedules in their first case and, therefore, committed a false oath in that case. The legal issue that must be resolved is whether the debtors' false oath in their previous case can serve as a ground for denying their discharge in the present case.

Section 727(a)(4)(A) of the Bankruptcy Code states, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with *the case*—

(A) made a false oath or account;

. . . .

(Emphasis added.) The plain language of this subsection indicates that the false oath must be made in the case pending before the court and, therefore, (a)(4)(A) is not applicable to the facts presented in this proceeding. The legislative history to § 727(a)(4)(A) is sparse and does not lead the court to a different conclusion.

In addition to the plain language of the Code, the court notes that when § 727(a) is read as a whole, it is clear that subsection (4)(A) was not meant to pertain to facts such as those presented in this proceeding. Similar to subsection (a)(4)(A), § 727(a)(6) states, in relevant part, that a discharge will be denied if "the debtor has refused, in *the case*" to obey court orders or respond to material questions. (Emphasis added.) The only subsection of § 727 which refers to acts done in another case as a basis for the denial of a discharge is (a)(7). That subsection states that a debtor will be granted a discharge unless it—

has committed any act specified in paragraph (2), (3), (4), (5), or (6) of [§ 727(a)], on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider; . . . .

11 U.S.C. § 727(a)(7).

■ If the debtor is an individual, "insider" is defined in § 101(30)(A) as including a "relative of the debtor or general partner of the debtor . . . ." " '[R]elative' means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree." 11 U.S.C. § 101(39). Under § 101, therefore, an insider is a person other than the debtor itself. *Whiteside F.S., Inc. v. Siefkin,* 46 B.R. 479 (N.D.Ill.1985) (district

court upheld bankruptcy court decision dismissing a complaint objecting to the debtors' discharge on the ground that § 727(a)(7) does not apply to consecutive joint petitions by husband and wife simply because they fit the definitions of insiders to one another. The court noted that debtors cannot be insiders of themselves and that a different result would have resulted if the husband and wife had filed separate petitions). Thus, § 727(a)(7) extends the basis for denial of a discharge to a debtor's misconduct in a substantially contemporaneous related case other than its own.

Discussing § 727(a)(7), this court in *American Sav. & Loan Assoc. v. Weber (In re Weber)*, 99 B.R. 1001, 1015 (Bankr.D. Utah 1989) stated that "this section strengthens the court's ability to prevent abuse to the system as a whole and provides additional means to defeat a discharge to those who may damage the integrity of the bankruptcy system through impropriety in a prior case." The court in *Weber* denied the discharge of an individual Chapter 7 debtor because he, as controlling officer of a related Chapter 11 debtor, had violated the terms of a cash collateral order in the related Chapter 11 case.[1]

While the policy annunciated in *Weber* is equally applicable to the case at hand, the court concludes that it simply cannot read it into the statute. Subsection (a)(4)(A) specifically refers to cases that are before the court, and subsection (a)(7), which is meant to deal with a debtor's misconduct in related cases, is limited, by its reference to insiders, to cases other than the debtor's. If the language of § 727(a)(7) stated that it applied to a debtor's misconduct in another case concerning itself or an insider, it would be unreasonable to find that the language of § 727(a)(4)(A) should be limited to apply to situations that arise in the case before the court. The statute reading as it does, however, mandates the court's present decision.

Accordingly, although unfortunate,[2] both the language of § 727(a)(4) and a reading of the statute on a whole lead the court to the conclusion that a false oath made by a debtor in one case which is ultimately dismissed is not grounds for denial of the debtor's discharge in a subsequently filed case. The plaintiffs' motion for a default judgment will be DENIED inasmuch as they have failed to state a cause of action upon which relief can be granted.

---

1. Congress obviously enacted § 727(a)(7) to deal with Bankruptcy Act cases such as *In re Blalock*, 118 Fed. 679 (D.S.C.1902). In *Blalock*, the court was faced with the issue of whether under Section 14(c)(1) of the Bankruptcy Act a debtor's discharge should be denied based on a false oath that the debtor had made in another case. Similar to *Weber*, the debtor in *Blalock* was the principal of a corporation that had also filed bankruptcy. During the course of the corporation's bankruptcy proceedings, the debtor swore that he owned certain properties in an effort to conceal corporate debts. Upon objections to his discharge, the court ruled that a false oath in the corporate case was not a ground for denying the debtor's discharge in his personal case.

2. The court notes that while this is an unsavory, yet unavoidable, result, the debtors should be aware that such conduct may be subject to criminal penalties. *See* 18 U.S.C. § 152 ("Whoever knowingly and fraudulently makes a false oath or account in or in relation to *any case* under title 11 ... Shall be fined not more than $5,000 or imprisoned not more than five years, or both.")