In re ABLOWICH et al.

(District Court, S. D. New York. January 26, 1900.)

BANKRUPTCY—DISCHARGE DENIED—CONCEALMENT OF BOOKS AND ASSETS.

On an application for discharge in bankruptcy it appeared that the bankrupts failed in 1895, and gave a bill of sale to certain creditors, under which the latter took possession of the bankrupts' store, and removed the stock. The bankrupts stated that their books of account were at that time in a safe in the store, and that the inventory of property and schedule of debts which they filed with their petition in bankruptcy was made from their books on the night before the sale to said creditors, when one of the bankrupts had the ledger at his house. It did not appear that the bankrupts ever went to the store for the books, or made any effort to recover them. There was a very large shrinkage or disappearance of assets, which, in the absence of the books, was entirely unexplained. *Held,* sufficient evidence that the bankrupts had destroyed or concealed their books of account with intent to conceal their true financial condition, and the discharge should be refused.

In Bankruptcy. On bankrupts' application for discharge and opposition thereto by creditors.

Arthur Furber, for bankrupts.

James, Schell, Elkus & McGuire, for creditors opposed.

BROWN, District Judge. Upon the objections to the discharge of the bankrupts in the above matter, the referee reports as follows:

"The first specification charges that the bankrupts in contemplation of bankruptcy and with fraudulent intent have concealed or destroyed their books of account, so that their true and actual financial condition could not be ascertained.

"I find from the evidence before me, that the bankrupts kept full books of account of all their business, and that they failed in business in 1895, and that about October 1st of that year they gave a bill of sale of their merchandise to Vietor & Achelis, who were creditors, and that said firm took possession of their store and premises and removed the stock.

"That the books of account were kept in a safe in the store, and were left there when Vietor & Achelis took charge, and that none of the bankrupts ever went back to the store to get the books and never made any attempt to get them; but they were, nevertheless, able to make an inventory of their property and a schedule of their creditors and amount of their liabilities when they filed their petition in 1899, which they say were made from their books on the night before the sale to Vietor & Achelis, at which time one of the bankrupts had the ledger at his private residence.

"I do not consider that the bankrupts, either at the time of their failure in 1895, or since filing the petition herein, have made any earnest effort to secure their books of account, and am of opinion that they either destroyed them or fraudulently concealed them; and this view is emphasized by the fact that on January 1, 1895, the firm stated that they had a surplus of assets over liabilities of $150,000, and on October 1, 1895, they made a bill of sale to Vietor & Achelis of all their merchandise to pay their debt to them, and some other creditors, and assigned their book accounts to other creditors and confessed judgments in large amounts, and still their liabilities on October 1, 1895, exceeded their assets by more than $100,000, thus showing a shrinkage in ten months of $250,000, which they are absolutely unable to explain.

99 F.—6

"They sold $175,000 worth of goods in 1895, some at cost and some at a profit, and they had no unusual loss in business that year, and still they are unable to account for the enormous shrinkage of assets or any part of it.

"An examination of the books was most important, as it could not fail to disclose the disposition of the assets, and to aid the creditors in tracing them.

"In view of all the facts, I am clearly of opinion that the bankrupts either had possession of their books and purposely concealed them, or that they willfully allowed them to be carried away and disposed of, in order to avoid a discovery of their true condition.                Ernest Hall, Referee in Charge.

"Dated January 11, 1900."

I am not wholly satisfied that the books were returned to the store by the bankrupts as they allege; in all other respects, I think the only rational conclusion from the evidence is that reported by the referee. Any jury of merchants would, I think, so find, and that the bankrupts have made no real efforts to obtain the books, but have virtually concealed them to prevent a disclosure of assets, and that a large amount of assets disappearing at the time of their failure have been fraudulently concealed from their creditors and from the trustee. The discharge should, therefore, be denied.