### In re ISAAC PRAGER & SON.

(District Court, N. D. West Virginia. January 11, 1905.)

BANKRUPTCY—DISCHARGE—GROUNDS OF OBJECTION.

   Bankrupts who made a general assignment two years before the enactment of the bankruptcy act, and were not thereafter engaged in any business prior to the filing of their petition in bankruptcy, cannot be denied a discharge on the ground of a concealment of property at the time of the assignment, not shown by objecting creditors to have been in their possession at the time of the filing of the petition, nor because of their failure to keep books of account after they ceased doing business.

In Bankruptcy. On application for discharge.

W. N. Miller, for bankrupts.

H. P. Camden and J. G. McCluer, for petitioners.

JACKSON, District Judge. On the 11th day of May, 1901, the application of Isaac Prager & Son was referred to George W. Johnson, a referee in bankruptcy, to pass upon the petition of the applicants for their discharge. The referee, having executed the order of the court and filed his report, recommended that the bankrupts should be granted an order of discharge. Exceptions were filed by the creditors.

There are two grounds of opposition to the discharge of the bankrupts under Act July 1, 1898, c. 541, 30 Stat. 544–566 [U. S. Comp. St. 1901, pp. 3418–3452], with the amendment of 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797–801 [U. S. Comp. St. Supp. 1903, pp. 409–418]): First. That the bankrupts have committed an offense punishable by imprisonment, as provided in the act. Second. That the bankrupts, with fraudulent intent to conceal their true financial condition in contemplation of bankruptcy, failed to keep books and accounts of their true financial condition, as required, from which their true condition might be ascertained.

There is not evidence sufficient to sustain the charge that the bankrupts in this case have committed any offense that is punishable by imprisonment, in making false returns or false affidavits to their returns.

The main ground that seems to be insisted upon in this case is that the bankrupts have not kept books of account and records, as required by the statute, showing their true condition at the time they filed their petition in bankruptcy. In support of this position, it is alleged in 1896 the bankrupts made a general assignment; that they had in their possession, possibly, large sums of money. There is some evidence tending to show that they had converted some of their property into cash; but, in my view of this case, that has nothing to do with the question before this court. The bankrupts may have acted ever so corruptly at the time of making the assignment, but it does not follow—and there is no evidence to show it—that at the time they filed their petition they had any such assets in their possession. They may have been, at the date of making the assignment, worth a considerable amount of money, and yet in a few days or weeks afterward they may have failed and become bankrupts. I do not understand the bankrupt act contemplates, where a party makes an assignment over two years before the bankruptcy act was passed and took effect, or that Congress intended, that in such case the act should have retrospective effect, to raise issues of fact as to what the condition of the bankrupt was at the time that such an assignment was made, or whether it was evident that he was a bankrupt. The question for the court to consider is, what was the condition of the bankrupts at the time they filed their petition?

One of the main grounds assigned in opposition to the discharge is that they kept no books. It appears that the bankrupts had been out of business for over two years, and, having engaged in no business whatever, as far as the evidence discloses, had no occasion to keep any books. This case is not analogous to In re Ablowich (D. C.) to be found in 99 Fed. 81. In that case, one of the bankrupts admitted that he had the books of the company, but did not produce them; and the court thought those books should be produced to show what had become of the assets of the company. In this case there are no books

in existence, except a small memorandum kept by the bankrupt Isaac Prager. The principle laid down in the case just cited can have no application in this case, if, in fact, I concur with the learned judge who delivered the opinion in that case. I confess I cannot well see how a man can be charged with fraudulent intent to conceal true financial condition, in contemplation of bankruptcy, nearly three years before the bankrupt act was passed.

There is a good deal in this case to excite the just suspicions of the court as to what became of the assets at the time of the assignment of these bankrupts; but there is not sufficient proof to convince the mind of the court that, at the time of the filing of this petition, the bankrupts had any other property than that which they surrendered in their schedule. The opposition to the discharge is always in the nature of a new suit. It requires proofs of the grounds set out in the specifications in opposition to the discharge. The proofs must satisfy the mind of the court that the grounds assigned in the specifications are true. The burden of the proof rests upon the opposing creditors, who must show by evidence that the bankrupts are not entitled to their discharge. A bankrupt will not be denied his discharge without proof that satisfies the court that he has committed some one of the offenses named in the statute which would justify the court in its action in refusing the discharge.

The finding of the referee is approved.