## In re BROCKMAN.

### (District Court, W. D. Kentucky.  October, 1908.)

1. BANKRUPTCY (§ 413*)—REFERENCE—JURISDICTION OF REFEREE.

   Where objections to a bankrupt's discharge were referred under General Bankruptcy Order 12, cl. 3 (18 Sup. Ct. vi), authorizing a reference to ascertain and report the facts, the referee properly refused to pass on the sufficiency of the objections.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 413.*]

---

2. BANKRUPTCY (§ 413*)—DISCHARGE—OBJECTIONS—RIGHT TO OBJECT.

Where neither the referee nor the court had held that specifications of objection to a bankrupt's discharge were insufficient, the creditors who had made such specifications could not except to the referee's report on the ground that he did not pass on the bankrupt's exceptions to the sufficiency of the specifications.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 413.*]

3. BANKRUPTCY (§ 414*)—DISCHARGE—OBJECTIONS—BURDEN OF PROOF.

A bankrupt, having otherwise complied with Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), must be discharged unless one or more of the objections thereto, within the statute, has been sustained by the evidence.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 414.*]

4. BANKRUPTCY (§ 409*)—DISCHARGE—FAILURE TO KEEP BOOKS.

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), providing that a discharge shall not be granted to a bankrupt who had destroyed, concealed, or failed to keep books with intent to conceal his financial condition, does not require that the bankrupt shall have kept books, nor fix any standard of bookkeeping; the intent not to keep books, to conceal his financial condition, or the destruction of books kept for that purpose, being the gist of the objection.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 409.*]

In Bankruptcy. Upon objections to the granting of a discharge.

Harry Robinson, for bankrupt.

Percy Booth, for creditors.

EVANS, District Judge. Certain creditors of the bankrupt who have proved and had their claims allowed have filed objections to the bankrupt's discharge. The grounds urged are: First. That the bankrupt, with intent to conceal his financial condition, failed to keep books or records from which such condition might be ascertained. Second. If he kept books at all, he destroyed or concealed them. Third. That within four months immediately preceding the filing of the petition he transferred to Logan Cravens a pistol, to Luther Brockman a pistol, to bankrupt's wife a pair of bracelets, and to a Mrs. Smith a hat, all and each of which transfers, it is alleged, were made with the intent to hinder, delay, or defraud his creditors. Fourth. That he transferred or permitted to be transferred to divers other persons whose names are unknown many different articles of goods, wares, and merchandise, with intent to hinder, delay, or defraud his creditors. Fifth. That within four months before filing the petition he concealed, removed, or destroyed, or permitted to be concealed, removed, or destroyed, certain moneys or property, the description of which the creditors cannot give. Sixth. That within four months of the filing of the petition he received several hundred dollars which he has not accounted for, which he has concealed or removed, or permitted to be concealed or removed, with intent to hinder, delay, or defraud his creditors.

Under the third clause of General Order in Bankruptcy No. 12, prescribed by the Supreme Court (18 Sup. Ct. vi), these objections were referred to the referee to "ascertain and report the facts." The bankrupt, upon that reference and before the referee, urged that some of the objections specified were too vague and indefinite, but the referee

held—and I am inclined to think correctly—that upon this particular ground of reference his duties were to "ascertain and report the facts" only. That was the only purpose for which the objections were referred to the referee. The creditors, who themselves made and filed those objections, now except to the referee's report, and, among the grounds of exceptions, urge that he did not then pass upon the bankrupt's exceptions to the sufficiency of their specifications in opposition to the discharge. In disposing of this phase of the case, it will suffice to say that the creditors cannot be heard to raise that question. It does not lie within their mouths to do so, particularly as neither the referee nor the court has held that the specifications are insufficient. The referee did not pass upon the question, and for the purposes of this case the court will treat them as sufficient. At all events, they are just as the creditors made them.

The referee, having taken the testimony, has reported his opinion and conclusions thereon to be that no one of the specified objections was sustained by the evidence. To this report the creditors have taken various other exceptions, which, together with all the testimony, have been carefully considered by the court, and the following conclusions have been reached: Having otherwise complied with the act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), the bankrupt must be discharged unless some one or more of the objections thereto (if they come within the statute) has been sustained by the evidence. The objecting creditors allege certain facts to exist. The law plainly puts upon them the burden of proving the truth of what they assert, and, whether or not they should prove those assertions to the exclusion of a reasonable doubt, they must certainly prove them to the satisfaction of the court. Insignificant amounts are involved in some of the objections, and the vague and conjectural character of others of them is noticeable, but I agree with the referee in his conclusion that no one of the objections has been shown to be true or well founded. A certain intent is essential under the act, and while intent may generally be presumed if acts intentionally done fairly authorize it, yet before the conclusion can be deduced the facts must be established which authorize it. I agree with the referee that this has not been done.

The argument of counsel was largely addressed to the failure of the bankrupt to keep books in a proper way, and it seemed to be supposed that the act requires every person who is authorized to petition for a discharge in bankruptcy to keep books and to keep them well. The act does not require anybody to keep books, nor fix any standard of bookkeeping. All it does in the premises is to provide that a discharge shall not be granted a bankrupt who has destroyed, concealed, or failed to keep books with intent thereby to conceal his financial condition. The intent must be shown to the satisfaction of the court to bring the case within the statute, and it would be a harsh and unjust construction to say that the intent must, as matter of law, be presumed from mere bad bookkeeping or from a mere failure to keep books. If that were the law, probably 9 out of every 10 country people, and a very large proportion of plain people everywhere, would be refused discharges if applied for, inasmuch as few of them can keep

books which are intelligible to anybody except themselves. It is a matter of common knowledge that a large proportion of the people do not keep books at all; for example, farmers, clerks, mechanics, and wage-earners generally, but this is either because they see no need for it, or else cannot do it satisfactorily. The ways of the people in the country are very different from those of great business concerns in cities and towns of the larger size. At all events, bad intent must be made to appear to the satisfaction of the court, and the testimony in this case does not, in my judgment, meet this requirement.

I have frequently had similar questions under consideration, and, among others, in the case of J. D. Stark, bankrupt, in 1905. In an opinion then delivered, this language was used:

"It certainly is true that the bankrupt's idea of bookkeeping was about as crude as could possibly be imagined, and one which, while consistent with his habits and motions of business, was about as far as possible from what are correct or tolerable business methods. * * * While common sense and good judgment require a merchant to keep books, yet, if he does not to so and fails in business, he is not denied a discharge for merely being a poor or even the poorest possible bookkeeper. Nor would such a provision of law be wise, for the greatest rascals may sometimes have the most perfectly kept books, so far at least as their face appearance may indicate. Under the bankruptcy act, therefore, the intent with which bad bookkeeping is done is the material thing. If that intent exist, it is immaterial whether, superficially considered, the books are ill kept or well kept. The evil intent alone will destroy the claim to a discharge in a case coming within the act. Here the bankrupt seems always to have kept books in the same absurd and almost unintelligible way. But as I find no satisfactory evidence of the intent thereby to conceal his financial condition, I have concluded that the finding of the referee * * * is not so against the evidence as to warrant the court in overruling that conclusion. Instead of any intent to conceal his financial condition, the bankrupt appears not to have had any idea that bookkeeping was needful to enable himself to understand it."

Other questions were also involved, but in affirming the judgment in that case (which was certainly on this point as strong as this one) the Circuit Court of Appeals did not deem it necessary to write an opinion.

Agreeing with the referee in the conclusions reached by him upon the testimony, the exceptions to his report will all be overruled, his report will be confirmed, and the discharge will be granted.