In re BROWN.

(District Court, N. D. New York. September 2, 1912.)

BANKRUPTCY (§ 409*)—GROUNDS FOR REFUSING DISCHARGE—FAILURE TO KEEP BOOKS.

The mere failure of a bankrupt to keep books in his business does not authorize the court to refuse him a discharge under Bankr. Act July 1, 1898, c. 541, § 14b(2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797, and Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1496), but the burden rests on an objecting creditor to further show that such failure was "with intent to conceal his financial condition," and, in the absence of any declaration or statement by him tending to show his intent, where his acts were as consistent with an honest as with a dishonest intent, a finding by a referee in favor of his honesty of purpose will not be reversed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

In the matter of Samuel Brown, bankrupt. On motion to confirm report of R. B. Fish, referee, in favor of granting bankrupt a discharge. Report confirmed and discharge granted.

C. J. Heffernan, of Amsterdam, N. Y., for bankrupt.
Chas. E. Hardies, of Amsterdam, N. Y., for objecting creditors.

RAY, District Judge. Samuel Brown was adjudicated a bankrupt on or about the 16th day of December, 1911. The bankrupt has no assets unless there be a trifling equity in his real estate which is subject to a mortgage of $3,000. There has been an effort to sell this real estate, but no offer in excess of the mortgage has been made. The liabilities are about $9,000, substantially all incurred within the six months prior to bankruptcy. The specification of objection to the bankrupt's discharge pressed is that the bankrupt, "with intent to conceal his financial condition, * * * failed to keep books of account or records from which such condition (financial) might be ascertained." For about four years preceding his bankruptcy Brown was engaged in business of slate roofing; that is, taking and execut-

ing contracts for slating the roofs of buildings in the execution of which contracts he purchased slate and other material on credit. The bankrupt testifies, and there is no evidence to the contrary, that he never kept any books of account, or memorandum books of any kind. He also says that, while he can write, he never attended school a day in his life. The evidence shows that he is an illiterate man. He also says that bills received by him for goods purchased were thrown in the wastebasket. He says that, when a roof was slated, he would count up the number of squares, and make out a bill accordingly, etc. From the fact that Brown failed to keep any books or memoranda of account while doing quite a large business, and the fact that he incurred this large indebtedness within the six months prior to bankruptcy, and the fact that shortly before bankruptcy he sold some slate in quantities, and the manner of Brown in giving his evidence before the referee, and alleged evasions in answering, the referee was asked to find and this court is now asked to find, the referee having refused so to do, that the failure to keep books of account was an act done, or omitted rather, by the bankrupt for the purpose of concealing his financial condition; that in failing to keep such books his intent was to thereby conceal his financial condition. There is no evidence that his attention was ever called to the necessity or propriety of keeping books, or that he has made any declarations or statements of any description as to his intent or purpose, if he had any, in not keeping books. It is true that Brown, when examined before the referee, did not speak with the frankness he ought to have spoken, but he finally answered all questions. There is no charge or evidence that he has concealed property or failed to obey all orders of the referee. It is not incredible that this illiterate man like many others relied on his memory, the results of his labor and expenditure of material before him on the completion of a job or contract, as evidence of what work he had done and the material furnished in carrying on his business. His doing business in this way, taking into account his ignorance and illiteracy, is not inconsistent with honesty of purpose, and does not point with any certainty to an intent on his part to "conceal his financial condition." A mere failure to keep books is not enough to justify the refusal of a discharge. In re Blalock (D. C.) 9 Am. Bankr. Rep. 266, 118 Fed. 679: In re Keefer (D. C.) 14 Am. Bankr. Rep. 290, 135 Fed. 885; In re Prager, 13 Am. Bankr. Rep. 527, 134 Fed. 1006; In re Brockman, 21 Am. Bankr. Rep. 251, 168 Fed. 1015. In the absence of any declaration or statement by Brown showing or tending to show his intent, if he had any, in failing to keep books, we must look to his acts. I find no evidence that he made any false statement for the purpose of obtaining credit, or that he purchased unreasonable amounts of merchandise. A person is presumed to intend the natural and known consequences of his voluntary acts, but I do not think it can be said that the natural and known consequences of a failure to keep books of account are to conceal the financial condition of the one omitting to keep books. The Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), as does the English law, made the mere failure to keep books a ground for refusing a discharge,

but the Bankruptcy Act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), as amended (Act Feb. 5, 1903, c. 487, 32 Stat. 797 and Act June 25, 1910, c. 412, 36 Stat. 839 [U. S. Comp. St. Supp. 1911, p. 1493]), explicitly states that the omission must have been accompanied by the specific intent to conceal the true financial condition, and hence the burden of proving this intent is on the objecting creditors. So, when from certain acts or omissions two inferences may be drawn the one pointing to a guilty or bad intent and the other perfectly consistent with honesty and absence of a bad purpose, it is the duty of the court to find in favor of honesty of purpose and intent. In this case the referee had the bankrupt before him and heard him give his testimony and noted his manner, etc. The appellate court should be slow to interfere with the finding of a jury or referee when the evidence will justify a finding either way. I think the ignorance of this bankrupt and his illiteracy and want of training in business methods account for his failure to keep books and quite likely all combined accounts for his failure in business.

The order of the referee overruling the specification of objection is affirmed.