## In re HINDIN.

(District Court, S. D. California, S. D. December 11, 1914.)

No. 1288.

1. BANKRUPTCY ⬤⟶414—REFUSAL OF DISCHARGE—EVIDENCE.

On objections to a bankrupt's discharge, evidence *held* insufficient to support the finding of a special master that the bankrupt failed to keep books of account from which his financial condition might be ascertained with intent to conceal his financial condition, though the only account of certain loans to him was kept in a small pocketbook instead of in the books of his business.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720-722; Dec. Dig. ⬤⟶414.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ⊂⊃414—REFUSAL OF DISCHARGE—EVIDENCE.

A bankrupt's intent to conceal his financial condition by failing to keep books of account is an inferable, rather than a presumptive, intent; such intent can hardly ever be proved by direct evidence, and its existence can only be inferred or presumed from the proof of facts which clearly and almost irresistibly leads to such conclusion, especially as, notwithstanding Bankr. Act July 1, 1898, c. 541, 30 Stat. 545, as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797, under which an intent to conceal his financial condition is sufficient without any actual design to defraud, the required intent is one sounding in fraud.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ⊂⊃414.]

3. BANKRUPTCY ⊂⊃415—DISCHARGE—QUESTIONS OF FACT.

Where, on the trial before a special master of the issues raised by objections to a bankrupt's discharge, the evidence as to whether the bankrupt obtained property on credit upon a false statement in writing made for the purpose of obtaining such credit was conflicting, it was the peculiar province of the master to determine the credibility to be accorded to the witnesses.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–708, 719, 723, 724, 726, 728; Dec. Dig. ⊂⊃415.]

In Bankruptcy. In the matter of Theodore J. Hindin, bankrupt. On exceptions to the report of a special master on the issues raised by objections to the bankrupt's discharge. Exceptions overruled in part and allowed in part and discharge granted.

Collier & Clark and Denis & Loewenthal, all of Los Angeles, Cal., for bankrupt.

Norman A. Bailie, of Los Angeles, Cal., for receiver.

BLEDSOE, District Judge. Objection was made to the discharge of the bankrupt in this case upon two grounds; one, that with intent to conceal his financial condition he failed to keep books of account or records from which such condition might be ascertained, and the other that he obtained property on credit on a materially false statement in writing, made by him for the purpose of obtaining such credit. Upon a reference to a special master for the purpose of reporting the facts and his conclusions, with respect to the issues created by the aforesaid objections, a hearing was had, and thereafter the master reported advising against the discharge of the bankrupt, on the ground that the first objection had been sustained, and reporting that in his judgment the second objection had not been sustained. Exception has been taken by the bankrupt to the finding against him, and likewise by the trustee to the finding in his favor.

[1] After carefully considering the evidence adduced before the master, I can come to no other conclusion than that his finding that the bankrupt failed to keep proper books of account, from which his financial condition might be ascertained, with the intent to conceal his financial condition, is not sustained by the evidence.

The only charge against the bankrupt is that he kept memoranda of certain loans made to him by his banker and by his brother in a small pocketbook, instead of in the books of his business. It is the fact, however, that the bankrupt, though engaged in the jewelry busi-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ness, was engaged in it in a somewhat small way; that he was a foreigner and not overly endowed with erudition; that it had been his custom, up to a short time previous to the initiation of the bankruptcy proceedings, for him merely to keep a file of his bills or accounts for goods purchased by him, paying them if possible when they became due, and since for some time he had been conducting a losing business, it had also been his custom to borrow sums, from time to time, from his banker, who was kindly inclined towards him, and from prosperous relatives and friends. It is also shown that he did not begin the keeping of books of account, in any substantial sense at all, until a few months before the bankruptcy proceedings, and that this was done solely from the suggestion of an employé named Klein, who had learned a little about keeping books back in Hungary, when a young man, and who seemed disposed to desire to take advantage of that slight knowledge of the art in the course of his employment under the bankrupt. It is also made to appear very clearly that the bankrupt was at no time contemplating bankruptcy proceedings until, upon an attachment suit being brought, and against his own belief and judgment, he was persuaded by his attorney and his friends to submit to bankruptcy as the only means of escaping from the unexpected dilemma in which he found himself. It might also be said, in addition, that the bankrupt testified positively and without equivocation that, respecting his failure to cause to be incorporated into his books of account the fact that he had some private loans, he at no time intended thereby to conceal his financial condition. None of his creditors, or other persons for that matter, had ever asked to examine his books, he had obtained credit without any reference to or statement of his financial condition, as shown by his books, and he seems to have had no cause to expect that such an inspection or statement would be required of him.

[2] The learned special master, in his report, inter alia, said:

"A person who is indebted to his friends and relatives in divers amounts, and keeps their accounts upon a book or memorandum which is not open to general inspection, and the existence of which he does not disclose until after he has been vigorously interrogated, in reference to his books, is presumed, or it must therefrom be inferred, that he kept the accounts with his relatives and friends in this manner with intent to conceal those accounts from his creditors."

Aside from the fact that I find nothing in the evidence to justify the conclusion that the bankrupt refrained from disclosing the loans above referred to until after he had been "vigorously interrogated," I am constrained to hold the master gave too slight attention to the requirement that the intent referred to in the statute is ordinarily an inferable one, and not a presumptive one. It is closely analogous, indeed comparable, to the specific intent often met in criminal statutes, such as the intent to commit a felony, which must have been specifically in the mind of a party entering a building in order that the crime of burglary might be made out. Such specific intent is as substantial a part of the crime as the entering of the building itself, and in the absence of the proof of such specific intent the crime could not be made out. Of course it is obvious that the existence of such in-

tent can hardly ever be proven by direct evidence, but it is none the less the fact that such existence can only be inferred or presumed from the proof of facts which clearly and almost irresistibly lead to such conclusion.

Though the intent now under consideration is not the fraudulent intent which was required under the Bankruptcy Act previous to the amendment of 1903, yet even after that amendment, in my judgment, it is an intent sounding in fraud, because it would be of the essence of fraud for a debtor to destroy or conceal, or fail to keep, proper books of account, with the intent to conceal his financial condition. It would seem as if the purpose of the amendment was merely to relieve those objecting to the granting of a discharge from being required to prove that the intent with which a bankrupt was concealing his true financial condition was a fraudulent one, that is, accompanied by, or in pursuance of, a design actually to defraud; now, it is sufficient if he has the intent to conceal his financial condition from his creditors, because it would be presumed that the existence of such intent was with the design of perpetrating a fraud.

In Truett v. Onderdonk, 120 Cal. 581, page 588, 53 Pac. 26, page 29, Mr. Justice Van Fleet said, "The presumption is always against fraud—a presumption approximating in strength to that of innocence of crime." It must follow, then, of course, that the quantum of proof necessary to overcome the presumption against fraud must itself approximate that required to overcome the presumption of innocence.

There are various decisions, e. g., In re Alvord (D. C.) 135 Fed. 236, that sustain the legal conclusions of the master, but I am constrained to hold that they enunciate too strict a rule as against a bankrupt, and I prefer to follow others more just and humane, as I conceive them to be, in their effect. In Re Marcus (D. C.) 192 Fed. 743, on a similar proceeding, it was held:

"The intent to conceal one's financial condition is a separate fact from the keeping of the books. The reasonable consequences of keeping imperfect books may be a concealment of one's financial condition, if the occasion ever arises when they are scrutinized and that fact would be enough to charge one with responsibility for that result, if the law forbade keeping imperfect books. The general intent of the criminal law is of this kind; it only means that the actor must be aware of his acts and then charges him with such consequences as would naturally follow from them, regardless of whether he had those in mind or not. When, however, as is sometimes the case, the law attaches no responsibility to an act unless the actor does have in mind the specific consequences, it is necessary as an additional element to prove that state of mind. This is such a case. Moreover, since the intent to conceal is different from the intent to keep imperfect books, the objectors must go further than to show merely that the bankrupts intended to keep the kind of books they kept; they must show, also, that they intended those books to conceal from somebody—which must be their creditors—their financial condition. That involves not only knowledge of how the books were kept, but some anticipation that at a future time they might be examined by creditors and would then fail to enlighten them upon all the facts."

So, also, it was held in Re Brockman (D. C.) 168 Fed. 1015:

"The intent must be shown to the satisfaction of the court to bring the case within the statute, and it would be a harsh and unjust construction to say that the intent must, as a matter of law, be presumed from mere bad

bookkeeping or from a mere failure to keep books. If that were the law, probably nine out of every ten country people, and a very large proportion of plain people everywhere, would be refused discharge if applied for, inasmuch as few of them can keep books which are intelligible to anybody except themselves. It is a matter of common knowledge that a large proportion of the people do not keep books at all; for example, farmers, clerks, and mechanics, * * * but this is either because they see no need for it, or else cannot do it satisfactorily. The ways of the people of the country are very different from those of great business concerns in cities and towns of the larger size. At all events, bad intent must be made to appear to the satisfaction of the court, and the testimony in this case does not, in my judgment, meet this requirement. * * * While common sense and good judgment require a merchant to keep books, yet, if he does not do so and fails in business, he is not denied a discharge for merely being a poor, or even the poorest possible, bookkeeper. Nor would such a provision in law be wise, for the greatest rascals may sometimes have the most perfectly kept books, so far at least as their face appearance may indicate. Under the Bankruptcy Act, therefore, the intent with which bad bookkeeping is done is the material thing. If that intent exist, it is immaterial whether, superficially considered, the books are ill kept or well kept. The evil intent alone will destroy the claim to a discharge in a case coming within the act."

In Re Brown (D. C.) 199 Fed. 356, Ray, District Judge, held, in a similar proceeding, in accordance with the general rule in criminal cases in determining matter of intent and the like:

"When from certain acts or omissions two inferences may be drawn, the one pointing to a guilty or bad intent and the other perfectly consistent with honesty, * * * it is the duty of the court to find in favor of honesty of purpose and intent."

[3] With respect to the exception urged by the trustee, the special master finds that the bankrupt did not obtain property on credit from any person upon a false statement in writing to such person for the purpose of obtaining such property on credit. I concur in this finding and overrule the exception made thereto. The evidence was conflicting in this respect, and it was the peculiar province of the master to determine the credibility to be accorded to the witnesses. In addition, I am constrained to hold as to this phase of the case, from an examination of the record, that his conclusion is the same as I myself would have arrived at.

An appropriate order will be entered overruling the exception of the trustee and confirming the report of the special master in that behalf, and allowing the exception entered by the bankrupt, and disaffirming the report of the special master in that behalf.

The discharge of the bankrupt will be granted.