In re C.A. THURMAN, Debtor.

**MCORP MANAGEMENT SOLUTIONS, INC., Plaintiff–Appellant,**

v.

**C.A. THURMAN, Defendant–Appellee.**

Nos. 89–6108, 89–6110.

United States Court of Appeals,
Tenth Circuit.

April 16, 1990.

**840**

Alan B. Diamond (Jack F. Williams with him on the briefs) of Hughes & Luce, Dallas, Tex., for plaintiff-appellant.

W. Rogers Abbott, II, of Abbott & Gordon, Oklahoma City, Okl., for defendant-appellee.

Before SEYMOUR, MOORE and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal by a creditor, MBank Dallas, N.A.,[1] from adverse rulings in the district and bankruptcy courts refusing to deny a general discharge of the debts of C.A. Thurman and to hold Mr. Thurman's debt to MBank non-dischargeable. Having examined the record and fully considered the arguments of the parties, we conclude no errors were committed in the courts below and affirm.

The applicable facts of this case are not disputed. Debtor, C.A. Thurman, secured a note payable to MBank with a pledge of 500 shares of Wag–A–Bag, Inc., (WAB) a corporation in which debtor held a 50% interest. The shares pledged constituted 6.94% of the outstanding stock of WAB and 13.88% of Mr. Thurman's 50% interest. Debtor defaulted on that note, and MBank ultimately recovered a state court judgment for the amount of the indebtedness. Before MBank's judgment against Mr.

Thurman became final, WAB consummated a series of transactions by which substantially all of its assets were transferred to a subsidiary corporation wholly owned by WAB. As a consequence, debtor acquired a 50% interest in the subsidiary, and WAB was left with limited assets which produced no income.

Mr. Thurman then petitioned for relief under the Bankruptcy Act. MBank filed an action objecting to discharge under 11 U.S.C. § 727(a)(2)(A) and seeking a determination of the dischargeability of its debt under § 523(a)(6). Section 727(a)(2)(A) provides that a debtor shall receive a discharge unless, with intent to hinder or defraud a creditor, he or she transferred "[p]roperty of the debtor ... within one year before the date of the filing of the petition." Section 523(a)(6) excepts from discharge any debt resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." Both the bankruptcy and district courts ruled against MBank, and it now prosecutes this appeal.

■ The district court affirmed the conclusion of the bankruptcy court that the transfer of WAB assets did not constitute a transfer by Mr. Thurman of his own property. Having thus concluded, both courts correctly decided MBank failed to prove grounds for denial of the debtor's general discharge under 11 U.S.C. § 727(a)(2)(A).[2] MBank seeks to avoid this consequence by arguing Mr. Thurman really transferred his beneficial interest in the stock of WAB to which MBank's lien attached; therefore, MBank did carry its burden of proof under § 727(a)(2)(A). We believe, as did the district court, this is a fanciful argument which ignores the unequivocal language of the statute.

1. During the pendency of this appeal the name MBank was changed to MCorp Management Solutions, Inc. For the sake of clarity, we shall, nonetheless, maintain the nomenclature used since the beginning of this case.

2. MBank devotes a substantial portion of its brief to the allegedly fraudulent nature of the transfer of the WAB assets, but that issue is of no moment in this appeal. The district court's

holding was in no way predicated upon whether debtor's conduct was fraudulent. It should thus be evident, even if the transfer of the WAB assets was accomplished by fraud, and we draw no such conclusion, the fact that those assets were not the property of the debtor is alone sufficient to deny the relief sought by the creditor.

MBank has cited no authority, and we have found none, which holds that the transfer of property of another which has incidental effect upon the assets of a debtor satisfies the requirements of § 727(a)(2)(A). MBank argues that the analysis employed by the bankruptcy and district courts raises form over substance. While facially appealing, that argument simply fails to consider the language employed by Congress in the adoption of § 727(a)(2)(A).

The words: "Property of the debtor," are not the same as "property in which the debtor has a derivative interest." To the contrary, the language of the statute is sufficiently circumscriptive to eliminate such an interpretation.

MBank contends the Bankruptcy Code defines "property" to include equitable interests of the debtor, 11 U.S.C. § 541(a)(1). Hence, the creditor maintains the transfer of an asset of a corporation is the transfer of property in which a stockholder has an equitable interest to which § 727(a)(2)(A) would extend. We disagree.

The purpose of § 541(a)(1) is to define "property of the estate." If MBank's theory is correct, the estate of a debtor who holds a share in a corporation would not only include the value that share would bring, but also a liquidatable interest in any asset owned by that corporation. That is not the scope of § 541(a)(1).

Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest. MBank's argument to the contrary is creative, indeed ingenious, but it is not persuasive, and the district and bankruptcy courts correctly so concluded.

MBank further argues this court has adopted conflicting standards of interpreting and applying the provisions of 11 U.S.C. § 523(a). Citing *Farmers Ins. Group v. Compos*, 768 F.2d 1155 (10th Cir.1985), and *First Nat'l Bank of Albuquerque v. Franklin*, 726 F.2d 606 (10th Cir.1984), MBank contends we have been inconsistent in the application of the term "willful and malicious" contained in § 523(a)(6). As a consequence of this lack of direction on our part, the creditor argues the district court was misled into affirming the bankruptcy court's holding.

Our analysis leads us to conclude *Franklin* and *Compos* are not in conflict. Any reference we made in *Franklin* to § 523(a)(6) was unfortunate and dictum. One who carefully reads the decision will discover that despite our confusing references to both § 523 and § 17 (726 F.2d at 610), the case could have arisen only under § 17 of the Bankruptcy Act of 1898 and not § 523 of the Bankruptcy Code. Consequently, despite the misleading language we employed, our *Franklin* holding is restricted to cases arising under § 17. Hence, *Franklin* was not a precedent binding upon the *Compos* court's search for the meaning of § 523(a)(6). That quest led the court into an examination of the legislative history of the statute. As a result, we stated:

> The legislative history makes clear that the "reckless disregard" standard applied by some courts under § 17(a)(8) [of the Bankruptcy Act of 1898] no longer applies under § 523(a)(6), and that proof of a "deliberate or intentional" injury is required to except a debt from discharge....

*Compos*, 768 F.2d at 1157. Thus, without specifically mentioning *Franklin*, we drew a contrast between the test we approved under § 17 and the test now required under § 523(a)(6).

With this analysis, it becomes clear the test of dischargeability in this circuit under 11 U.S.C. § 523(a)(6) is established in *Compos*. It is not for this panel to take issue with that holding any more than it was within the province of the district court to ignore its provisions.

MBank argues that by whatever standard is to be followed, it proved the transfer resulted in a debt excepted from discharge by § 523(a)(6), and the bankruptcy court's contrary findings are clearly erroneous. We disagree. Those findings are binding upon us unless after a full review of the circumstances we are left with the clear impression a mistake was made by

the bankruptcy court. Fed.R.Bankr.P. 8013; *Pioneer Bank v. Rasmussen,* 888 F.2d 703, 704 (10th Cir.1989); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Despite MBank's arguments, we are not impressed that an error was made.

 MBank's principle contention is that the transfer of WAB assets left MBank's collateral essentially worthless. MBank reasons that it was resultantly injured and adds Mr. Thurman intended precisely that effect. On this score, the bankruptcy court found:

> The evidence was that the transfer of assets had a business purpose, although of questionable ethics. At the time of the transfer, WAB had three lawsuits pending against it; one a personal injury lawsuit in which damages were being sought against WAB; the second, a shareholder derivative suit; and the third, a wrongful discharge suit brought by an ex-WAB employee. WAB's purpose for transferring the assets was to remove those assets from the reach of potential judgment creditors. Since the other shareholder and the two directors of WAB did not testify, the court is unable to find that the corporation had as it purpose the intentional devaluation of the stock held as collateral by MBank.
>
> Any injury to MBank was, at best, an incidental consequence of WAB's corporate conduct. Debtor, while an insider, was only a 50% shareholder and only one of three directors. As such, debtor could not transfer assets on his own authority and for his own purposes. In addition, any injury to MBank does not rise to the level of being willful and malicious. While the value of the WAB stock had been substantially reduced, it has not been destroyed.... MBank could foreclose on the stock and pursue its state court remedies incident to such stock ownership in a non-debtor corporation.[3]

Those findings support the conclusion that Mr. Thurman did not act deliberately and intentionally to injure the security interest held by MBank. Indeed, at the time of the transfer MBank was not a creditor of WAB, and its lien rights in 500 shares of WAB stock had not been foreclosed. Consequently, if an intent to harm creditors is inferable from the evidence, that intent would have to have been directed toward the putative WAB creditors and not toward MBank. While MBank seems to argue that intent is transferable, it cites no supporting authority for that position.

We agree with both the bankruptcy and district courts that Mr. Thurman and his associates acted with questionable ethics in effecting the transfer of the WAB assets. We are unable to conclude, however, that debtor's actions justify the loss of his discharge or the exception of MBank's debt from the effect of that discharge.

AFFIRMED.

---

**3.** In addition to these findings, MBank concedes WAB was insolvent at the time its assets were transferred. We could, therefore, justifiably assume MBank's collateral was of questionable value, and the transfer would not have worked a consequential injury.