### In the Matter of Dennis R. WOODHEAD, Debtor.

### BPS GUARD SERVICES, INC., d/b/a Wells Fargo Guard Services, Plaintiff,

### v.

### Dennis R. WOODHEAD, Defendant.

### Bankruptcy No. BK93–41331. Adv. No. A93–4110.

United States Bankruptcy Court, D. Nebraska.

Sept. 1, 1994.

---

**630**

Barry L. Hemmerling, Lincoln, NE, for debtor/defendant Dennis R. Woodhead.

Lavern R. Holdeman, Lincoln, NE, for plaintiff BPS Guard Services, Inc., d/b/a Wells Fargo Guard Services.

Joseph H. Badami, Chapter 7 Trustee, Lincoln, NE.

Patricia A. Dugan, U.S. Trustee, Omaha, NE.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This adversary proceeding concerns the dischargeability of a debt that may arise from a pending claim for alleged intentional interference with business relations, breach of fiduciary duty, and appropriation of good will (See A93–4110, A93–4116, and District Court Case No. 4:CV93–3163). Before the court is the Motion for Summary Judgment by the defendant-debtor, Dennis R. Woodhead (Fil. # 12). Partial summary judgment is granted for the debtor under § 727(a)(2)(A) and § 523(a)(4). Summary judgment is denied under § 523(a)(6).

### FACTS

The plaintiff, BPS Guard Services, Inc. ("BPS"), conducts a security business in Nebraska under the name of Wells Fargo Guard Services. In the past, BPS has provided security services for such clients as the Nebraska State Board of Agriculture, the Bob Devaney Sports Center, K & C Management, American Signature, and the Arbor Day Foundation. The debtor, Dennis R. Woodhead, is a former employee of BPS. Shortly after leaving employment with BPS in April of 1993, Mr. Woodhead and another former employee of BPS formed a security service, North Star Security, Inc., which performed security services for several former clients of BPS and employed several former employees of BPS. North Star Security, Inc. filed Chapter 7 bankruptcy on November 9, 1993. Mr. Woodhead is currently employed by Corporation Security, Inc., a corporation formed in October of 1993.

### LEGAL BACKGROUND

In an action filed by BPS in the United States District Court for the District of Nebraska (Case No. 4:CV93–3163), BPS seeks judgment against Dennis R. Woodhead and other defendants for intentional interference with business relations, breach of fiduciary duties, and misappropriation of goodwill. That case was referred to this bankruptcy court where it is currently pending as a separate adversary proceeding (A93–4116).

In the present adversary proceeding, BPS asserts that under Bankruptcy Code §§ 523(a)(4), 523(a)(6), and 727(a)(2)(A), Mr. Woodhead's alleged obligation to BPS is nondischargeable. In the motion for summary judgment now before the court, the debtor contends that even assuming that he is liable for damages on the claims asserted, that liability may be discharged in this bankruptcy case. Thus, the debtor asserts that if this court finds the alleged debt dischargeable, no purpose would be served by adjudicating liability in adversary proceeding A93–4116. The debtor requests entry of summary judgment in this case and dismissal of adversary proceeding A93–4116.

Summary judgment is properly granted when the court determines that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Bankruptcy Rule 7056(c). In making these determinations, the court must view the facts in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d

538 (1986); *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986).

Section 523(a)(4) of the Bankruptcy Code provides that a debt "for fraud or defalcation while acting in a fiduciary capacity ..." is nondischargeable. 11 U.S.C. § 523(a)(4) (1994).

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another ..." is nondischargeable. 11 U.S.C. § 523(a)(6) (1994).

Section 727(a)(2)(A) provides, in pertinent part, that a debtor is barred from discharge if the debtor "with intent to hinder, delay, or defraud a creditor ... transferred ... or has permitted to be transferred ... property of the debtor, within one year before the date of the filing of the petition...." 11 U.S.C. § 727(a)(2)(A) (1994).

## DISCUSSION

Mr. Dennis R. Woodhead is entitled to partial summary judgment under § 727(a)(2)(A) and § 523(a)(4). However, the Motion for Summary Judgment (Fil. # 12) is denied as to § 523(a)(6) because there exists a dispute of material fact on this issue.

### Section 523(a)(4)

■ Section 523(a)(4) excepts debts from discharge which arise from "defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4) (1994). The requisite "fiduciary capacity" under § 523(a)(4) does not exist merely because a debt arose from the breach of a state recognized fiduciary duty. It has long been held that the term "fiduciary capacity" under § 523(a)(4) requires an express trust.

■ In the case of *In re Long,* 774 F.2d 875 (8th Cir.1985), it was held that only trustees of express trusts meet the requirement of "fiduciary capacity" set out in § 523(a)(4). *In re Long,* 774 F.2d at 878. On the facts of this case the debtor, Dennis Woodhead, was not a trustee, rather he was a corporate employee. Thus, under the strict interpretation set forth in *Long,* § 523(a)(4) does not apply since there was no express trust.

■ However, I have previously concluded that § 523(a)(4) may apply even absent an express trust, if the debtor has a sufficiently elevated level of fiduciary duty. In *Matter of Burgess,* 106 B.R. 612 (Bankr. D.Neb.1989), I concluded that "fiduciary capacity" under § 523(a)(4) could extend to an agency relationship in which the duties and control exercised by the agent are tantamount to those of a trustee of an express trust. *Matter of Burgess,* 106 B.R. at 620. Although a court looks to state law to determine if an agency relationship exists, federal common law determines if the particular agency possesses characteristics sufficiently similar to an express trust to meet the requirements of § 523(a)(4). *Id.*

In *Burgess* the debtor, Curtis Burgess, held a durable power of attorney which gave him unfettered control over the assets of a third party. I concluded in *Burgess,* that a durable power of attorney held by the debtor created a sufficient fiduciary relationship to meet the requirements of § 523(a)(4). *Id.* at 620. I specifically listed seven characteristics which led me to that conclusion:

1. The power of attorney was a general power of attorney giving the agent control over all the assets of the principal;

2. The power of attorney was durable—it survived the death of the principal;

3. The power of attorney was to be exercised for the sole benefit of the principal;

4. The principal executed the power of attorney intending to give up management of her business affairs in perpetuity;

5. The principal did not in fact subsequently play an active role in the management of her affairs;

6. At the time the power of attorney was executed there existed an economic and financial conflict of interest between the principal and the agent; and

7. The principal, Estella Burgess, signed the power of attorney within one week of the death of her husband. Within approximately two years of the execution of the power of attorney, and during the time the power of attorney was in force and effect, a conservator was appointed for Estella Burgess.

*Id.* As a result of these characteristics, the debtor, Curtis Burgess, was in substance acting as a trustee, although the form of the arrangement differed. Mr. Burgess had an elevated level of fiduciary duty due to the lack of capacity of the principal/beneficiary, who exercised no control over him.

In contrast to *Burgess,* I conclude that the employee/employer relationship in the present case does not give rise to the elevated level of fiduciary capacity required by § 523(a)(4). The relevant material facts are undisputed. Mr. Woodhead was employed by BPS as a "physical manager" from February of 1990 to April 29, 1993. His duties involved hiring security officers, scheduling Lincoln area accounts, and recording time for all Lincoln accounts. Mr. Woodhead was also given authority to contact clients. However, Mr. Woodhead was not a member of the board of directors of BPS, or an officer of BPS with authority to act on behalf of the corporation. Mr. Woodhead was under the direct supervision of other members of the corporation.

There are no facts before me from which I could conclude that Mr. Woodhead acted with the requisite fiduciary capacity of § 523(a)(4). Mr. Woodhead was not the trustee of an express trust and his fiduciary duties as an employee of BPS were of a mundane variety. The duties of Mr. Woodhead as an employee of BPS were not tantamount to those of a trustee. His fiduciary duties were much less than those found in the *Burgess* case—he was not given irrevocable, unrestricted control over property for the benefit of a person of limited capacity. Therefore, I conclude that the alleged liability of Mr. Woodhead is not excepted from discharge under § 523(a)(4), and the debtor is entitled to summary judgment on this issue.

### Section 523(a)(6)

■ I conclude that summary judgment under § 523(a)(6) should be denied. Section 523(a)(6) excepts from discharge a debt which is the result of "willful and malicious injury" by the debtor. 11 U.S.C. § 523(a)(6) (1994). There exists a dispute of material fact as to when and what actions were taken by the debtor in contacting former clients and employees of BPS. As a result, the court is unable to determine whether the conduct of the debtor was "headstrong and knowing" and "targeted at the creditor." *In re Long,* 774 F.2d at 881. A trial is necessary to allow the trier of fact to determine these facts. Therefore summary judgment is denied under § 523(a)(6).

### Section 727

■ BPS also seeks to bar discharge under § 727(a)(2)(A) on the basis of the transfer of the contractual rights of BPS. There are two transfers involved which could form the basis of an argument under § 727(a)(2)(A)—the transfer of contract rights from BPS to North Star Security, Inc., and the subsequent transfer of contract rights from North Star Security, Inc. to Corporation Security, Inc.

Section 727(a)(2)(A) is not applicable to the transfer of contract rights from BPS to North Star Security, Inc. because the transfer did not involve property owned by the debtor. Section 727(a)(2) applies only to the transfer of property of the debtor or the bankruptcy estate.

The material facts as to this transfer are undisputed. The contract rights between BPS and its former clients, such as the Nebraska State Board of Agriculture, were owned by BPS, not the debtor. The debtor, in his position as physical manager, was not given authority to enter contracts on behalf of BPS. Furthermore, all contracts were to be approved by the board of directors, of which the debtor was not a member. The debtor was also not a major stockholder in BPS. Therefore, it is undisputed that the debtor did not have an ownership interest in the contract rights in question at the time of their transfer from BPS.

■ Even if we assume the debtor "owned" the contractual rights after the transfer, he certainly did not own these assets at the time the transfer was made. Section 727 is not intended to address this situation, but rather the opposite situation where assets are transferred from the debtor or the bankruptcy estate to a third party thereby depleting the bankruptcy estate. Consequently, summary judgment should be grant-

ed for the debtor under § 727(a)(2)(A) as applied to the alleged transfer of contractual rights from BPS to North Star Security, Inc.

 The second transfer at issue under § 727(a)(2)(A) is the subsequent transfer of contractual rights from North Star Security, Inc. to Corporation Security, Inc. The debtor was a 50% shareholder in North Star Security, Inc. As such, BPS argues that the debtor had a sufficient ownership interest that the transfer depleted the debtor's bankruptcy estate. In concurrence with the Tenth Circuit decision of *In re Thurman,* 901 F.2d 839 (10th Cir.1990), I conclude that § 727(a)(2)(A) does not apply to the transfer of the assets of a corporation in which the debtor is a shareholder. See *In re Thurman,* 901 F.2d at 840–41; *In re Srour,* 138 B.R. 413, 419–20 (Bankr.S.D.N.Y.1992); *In re Colodner,* 147 B.R. 90, 92–93 (Bankr. S.D.N.Y.1992). Section 727(a)(2)(A) applies only to transfers of property in which the debtor possesses a direct proprietary interest, and does not extend to derivative interests of the debtor in his corporation's assets. *Id.* Therefore, I conclude that § 727(a)(2)(A) is also inapplicable on the facts of this case to the transfer of assets from North Star Security, Inc. to Corporation Security, Inc. Accordingly, summary judgment should be granted to the debtor as to § 727(a)(2)(A).

*Withdrawal and Consolidation Recommended*

Partial summary judgment will be entered under § 523(a)(4) and § 727(a)(2)(A).

The only remaining issue in this adversary proceeding is whether § 523(a)(6) excepts the alleged debt from discharge. Due to common questions of fact, the issues of liability and dischargeability could be determined in a single trial. Therefore, unless a party in interest objects within fifteen (15) days of this order, I will recommend that this Adversary Proceeding, No. A93–4110, and Adversary Proceeding No. A93–4116 be withdrawn by the district court for adjudication. I will recommend, if appropriate, that the district court consider consolidating the cases for trial.

The Motion for Summary Judgment (Fil. # 12) is granted as to § 523(a)(4) and § 727(a)(2)(A).

The Motion for Summary Judgment (Fil. # 12) is denied as to § 523(a)(6).

A separate order will be entered consistent herewith.

IT IS SO ORDERED.