# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 03-6083NE

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Steven S. Wagner; | * | |
| Alberta A. Wagner, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Northeast Nebraska Economic | * | |
| Development District, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Steven S. Wagner, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Defendant-Appellant, | * | District of Nebraska |
| | * | |
| Alberta A. Wagner, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

_____

Submitted: February 13, 2004
Filed: February 23, 2004

———

Before KRESSEL, Chief Judge, SCHERMER, and FEDERMAN, Bankruptcy Judges.

———

KRESSEL, Chief Judge.

Steven Wagner appeals from an order of the bankruptcy court denying him a discharge based on an intent to hinder, delay, or defraud a creditor pursuant to 11 U.S.C. § 727(a)(2)(A). Because we believe the bankruptcy court misapplied the law, we reverse.

## BACKGROUND

Wagner operated a closely held business called Wagner Industries, LLC, which in conjunction with Wagner Tool and Engineering, LLC, designed, developed and produced proprietary products. The company had three marketing lines for its products: TruMark, for machines that paint lines on athletic turf surfaces; Work Center Pro, for industrial workbenches; and Elkhorn River Valley Livestock Products, for hay feeders for horses. Steve and Alberta Wagner were the only shareholders of Wagner Industries.

In the fall of 2000, Wagner Industries obtained a loan from the Northeast Nebraska Economic Development District, which oversees the distribution of revolving loan funds used to start or expand local businesses. The funds were used to purchase equipment for Wagner Industries. Wagner personally contributed $27,000 and NNEDD loaned Wagner Industries $111,000. In addition to a personal guarantee by Wagner, the loan was secured by liens on machinery, equipment, fixtures, inventory, accounts, contract rights, and other assets, and the proceeds therefrom of Wagner Tool and Engineering and Wagner Industries. Monthly payments of approximately $1,600 were to be made on the note beginning in January 2001.

2

Wagner Industries generally made timely payments, occasionally requesting and receiving three-month deferments.

In the fall of 2001, the company's sales dropped significantly. Wagner soon began to seek buyers for the product lines in an effort to keep the company going. Wagner believed the TruMark line to be worth $40,000 to $50,000, the Work Center Pro line to be worth $75,000, and the Elkhorn River Valley line to be worth $25,000.

In April 2002, Wagner Industries sold the TruMark segment of its business for $40,000, with the sale schedule to close thirty days thereafter. Wagner notified NNEDD of the sale and proposed to pay $35,000 of the proceeds toward note reduction with the remainder "to address receivables."

The scheduled closing date came and went with no payment made to NNEDD, and in late summer of 2002, a NNEDD representative contacted Wagner about the expected $35,000 payment. Wagner said the money was coming, and that he intended to be able to pay half of the $35,000 to NNEDD by the end of the year. Wagner, however, made no lump sum or partial payment.

The TruMark sale did close in May 2002, and Wagner deposited the proceeds into the Wagner Industries account. Instead of using the proceeds to reduce the loan to NNEDD, Wagner used the funds to continue operating Wagner Industries, believing that the company had a good chance of surviving the economic downturn if he could keep it afloat.

In March of 2003, the Wagners filed a Chapter 7 petition. Shortly thereafter, this adversary proceeding was filed, objecting to the Wagners receiving a discharge on the ground that pursuant to 11 U.S.C. § 727(a)(2), Steven Wagner transferred property securing NNEDD's debt with intent to hinder, delay, or defraud NNEDD.

3

On September 5, 2003, shortly after the conclusion of trial, the bankruptcy court entered an order overruling the plaintiff's objection to defendant Alberta Wagner's discharge. In a September 24, 2003, opinion, the bankruptcy court found that Wagner purposely failed to turn over proceeds of the lender's collateral, with the intention of delaying or hindering the lender in its collection efforts, and thus denied Wagner a discharge pursuant to 11 U.S.C. § 727(a)(2). A judgment to that effect was entered that same day.[1] Wagner appeals.

## STANDARD OF REVIEW

We review findings of fact for clear error. *Christians v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1413 (8th Cir. 1996); *Hartford Life and Accident Ins. Co. v. Henricksen (In re Henricksen)*, 227 B.R. 759 (B.A.P. 8th Cir. 2002). We review conclusions of law *de novo. Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).

## DISCUSSION

While the parties argue a number of issues, we conclude that one is determinative: is it appropriate to deny a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) where the alleged fraudulent transfer of property is not that of the debtor, but of another party?  We think the answer is "no."  Section 727(a)(2)(A) provides:

> A court shall grant a debtor a discharge unless–
> (2) the debtor, with intent to hinder, delay, or defraud a

---

[1] The judgment omits any reference to the earlier court ruling in favor of Alberta Wagner. Neither party makes an issue of this oversight.

> creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed–
> (A) property *of the debtor*, within one year before the date of the filing of the petition;...

11 U.S.C. § 727(a)(2)(A) (emphasis added). To prevail under this section, the plaintiff must show that the debtor has engaged in the proscribed conduct and that the property involved must be property of the debtor or the property of the debtor's estate (if the transfer occurred post-petition). *Riumbau v. Colodner (In re Colodner)*, 147 B.R. 90, 93 (Bankr. S.D.N.Y. 1992) (citing *M Corp Management Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990); *CIT Group/Factoring Mfr. Hanover, Inc. v. Srour (In re Srour)*, 138 B.R. 413 (Bankr. S.D.N.Y. 1992)). Moreover, the debtor must have more than a mere *derivative interest* in the property in question because the term "property of the debtor," as expressed in 11 U.S.C. § 727(a)(2)(A), has reference to property in which the debtor has a *direct* proprietary interest. *In re Colodner,* 147 B.R. at 93 (citing *M Corp. Management Solutions, Inc.*, 901 F.2d at 841) (Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest).

In this case, the property transferred was not property of the debtor, but rather property of the LLC. *See BPS Guard Serv., Inc. v. Myrick (In re Myrick),* 172 B.R. 633, 638 (Bankr. D. Neb. 1994) (holding that § 727(a)(2)(A) does not apply to the transfer of the assets of a corporation in which the debtor is a shareholder); *In re Srour*, 138 B.R. at 419 (stating it does not follow that because the debtor may have caused his corporation to transfer its assets in fraud of its creditors, it should also follow that the transfer of property of another entity should support a denial of the debtor's discharge when he is not charged with transferring any of his own property within the meaning of § 727(a)(2)(A)); *In re Wines*, 114 B.R. 794, 796 (Bankr. S.D.

5

Fla. 1990). Wagner Industries received the proceeds of the sale of the TruMark line and deposited them in its bank account. While Wagner promised on behalf of Wagner Industries to pay NNEDD from those proceeds, instead the LLC used the funds to pay the LLC's operating expenses as well as to make the monthly note payments to NNEDD. Although Wagner was a shareholder of Wagner Industries, the proceeds transferred were not his property.

Arguments to the contrary simply fail to consider the language employed by Congress in the adoption of 11 U.S.C. § 727(a)(2)(A). Had Congress intended to include the transfer of property of another entity, it could have included that, but the language in subsection (2)(A) is sufficiently clear to eliminate such an interpretation. *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990). Where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (citing *Caminetti v. U.S.*, 242 U.S. 470 (1917)). "'The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Kolich v. Antioch Veterinary Hosp. (In re Kolich)*, 328 F.3d 406, 409 (8th Cir. 2003) (quoting *Ron Pair Enter., Inc.*, 489 U.S. at 242).

## CONCLUSION

We reverse the order of the bankruptcy court denying a discharge to Steven S. Wagner.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.