NOT FOR PUBLICATION

FILED

JUN 30 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   EC-13-1312-KuJuTa |
| ARVIND KAUR SETHI, ) | Bk. No.   10-40553 |
| Debtor. ) | Adv. No.   11-02273 |
| _____ ) | |
| ARVIND KAUR SETHI, ) | |
| Appellant, ) | |
| v. ) | **MEMORANDUM**[*] |
| WELLS FARGO BANK, NATIONAL ) ASSOCIATION, ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed – June 30, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable David E. Russell, Bankruptcy Judge, Presiding

Appearances:     Michael R. Totaro of Totaro & Shanahan argued for Appellant Arvind Kaur Sethi; Brandon L. Reeves of Ellis Law Group, LLP argued for Appellee Wells Fargo Bank, National Association.

Before: KURTZ, JURY and TAYLOR, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Arvind K. Sethi appeals from the bankruptcy court's order denying her a discharge in bankruptcy under 11 U.S.C. § 727.[1] Because the bankruptcy court did not make sufficient findings to support its ruling, we VACATE and REMAND.

**FACTS**

Sethi is a doctor who has been licensed to practice medicine in California since 1994. Between 1999 and 2010, Sethi had her own incorporated medical practice known as Arvind K. Sethi, M.D., Inc. She also owned and operated an incorporated medical spa business. Both businesses were operated for a time from the same location on Creekside Drive in Folsom, California.[2]

In 2007, Sethi obtained from Wells Fargo Bank, National Association a $1.5 million construction loan and a $225,000 equipment loan. The equipment loan documents indicated that the borrower was her medical practice, whereas the construction loan documents indicated that the borrower was Sethi individually. Sethi was personally liable for both loans either as the borrower or as a guarantor. The construction loan was used to build out the Creekside Drive property for commercial purposes. The

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure. All Civil Rule references are to the Federal Rules of Civil Procedure.

[2]Sethi was unable to recall the name of the corporation through which the medical spa initially was run. She also mentions a third corporation generally known as Mediwell. Some of the documentation associated with Wells Fargo's equipment loan suggests that Sethi did business as Mediwell as part of her private medical practice and as part of her medical spa.

2

equipment loan was used to furnish the Creekside Drive Property with furniture, fixtures and equipment. According to Sethi, she conducted all of her business operations through one or more of her corporations.

Sethi was in default on the equipment loan throughout 2009 and 2010. In December 2009, Wells Fargo notified Sethi that it had arranged for an auction sale of its equipment collateral to take place at the Creekside Drive property in January 2010. But before the auction sale occurred, Sethi caused a friend of hers, Steve Saxon, to move some of the equipment to a storage facility that Saxon owned and operated. She also took some of the equipment to her home and set up a laser treatment room in her daughter's old bedroom. According to Sethi, one of the reasons she moved the equipment is that she did not want Wells Fargo to auction the equipment at the Creekside Drive property in front of her patients and employees. Another concern of Sethi's was closing down her practice gradually so that she did not incur liability to health plans and to patients.

After a while, at least some of the equipment taken to the storage unit and her home was moved back to the Creekside Drive property. Later on, after Wells Fargo obtained relief from the automatic stay in Sethi's second bankruptcy case, Wells Fargo repossessed the equipment collateral located at the Creekside Drive property. Since she started her private practice in 1999, Sethi has never kept any sort of written equipment inventory.

Sethi filed her first chapter 13 bankruptcy case (Case No. 10-25171) in March 2010. Sethi signed the petition and the related filings knowing that she was stating under oath that the

3

documents were accurate and complete. At the same time, she also knew that the petition and related filings actually were inaccurate and incomplete. According to her, she personally believed that the documents eventually would be amended.

The first meeting of creditors pursuant to § 341(a) was held in April 2010, at which time Sethi was examined under oath as required by § 343. She told the trustee during her examination that her petition and related filings were accurate and complete, even though she knew this was not true. When the trustee followed up by asking her whether there were any corrections she needed to make, she said she needed to correct the amount of child support, and she further stated, "I'll look at everything I need to do." § 341 meeting trans. (April 15, 2010) at 4:8. Later on, when asked why she had not listed the $1.5 million construction loan owed to Wells Fargo, and only listed the $225,000 equipment loan, she stated: "Because, like I said, I have to amend it. I have to really look at everything very carefully." § 341 meeting Trans. (April 15, 2010) at 15:16-18.

When asked during the examination what happened to the equipment at the Creekside Drive property, she stated that she did not know where it all was at the time. She indicated that some of it might have been returned to her lenders and some of it might have been moved to storage, but that she thought at least some of it was still at the Creekside Drive property. According to Sethi, she was overwhelmed, so she let her office manager and Saxon decide what would be best to do with the equipment while she was traveling in India.

In May 2010, the bankruptcy court dismissed Sethi's first

4

bankruptcy case because Sethi was ineligible for relief under chapter 13. Sethi nonetheless filed a second chapter 13 case in August 2010. At Sethi's request, this second case was converted to chapter 11 in November 2010. Once again at Sethi's request, the case was converted to chapter 7 in February 2011. In support of her motion to convert the case to chapter 11, in October 2010, Sethi filed a declaration in which she attempted to explain the tortuous history of her first bankruptcy case, including the known omissions and inaccuracies in her first bankruptcy petition and schedules. She explained that her non-attorney friend "took care of everything" and "put everything together" and assured her that they could later amend her filings to address the inaccuracies and omissions.

Oddly, in the same declaration, when discussing the filing of her second bankruptcy case, Sethi did not say that her friend took care of everything or that her friend put everything together. Instead, she stated "I filed this case" and "I asked my friend to help me file another bankruptcy." (Emphasis added.) In fact, in the very first sentence of the October 2010 declaration, Sethi stated that she filed her second bankruptcy case "by myself in pro per." These statements in her October 2010 declaration were false and misleading. At her February 2012 deposition in the underlying adversary proceeding, she admitted that she did not sign the second bankruptcy petition, she did not review it or the accompanying schedules, she did not even see them before they were filed, and she was not aware of specifically when her friend filed them.

Sethi signed the October 2010 declaration under penalty of

5

perjury, filed it in the bankruptcy court, and served it on the chapter 13 trustee, the United States trustee and on her creditors. The court learned the true facts concerning the filing of Sethi's second bankruptcy case from the evidence Wells Fargo submitted at the May 2013 trial in Wells Fargo's adversary proceeding. As far as we can tell from the record, Sethi never voluntarily disclosed the true facts to the court or to her creditors.

In April 2011, Wells Fargo filed its complaint seeking to deny Sethi a discharge under § 727(a). The complaint stated three claims for relief, one under § 727(a)(2), another under § 727(a)(4) and a third under § 727(a)(5). After several continuances, trial was held on May 9, 2013. In her trial brief, filed the day before trial, Sethi contended that the property she was accused of concealing in violation of § 727(a)(2) and not accounting for in violation of § 727(a)(5) was neither property of the debtor nor property of the estate. Based on this contention, Sethi claimed two things: (1) the bankruptcy court lacked subject matter jurisdiction; and (2) Wells Fargo could not prevail on either its § 727(a)(2) claim or its § 727(a)(5) claim. Sethi also argued that Wells Fargo could not prove that Sethi had the requisite state of mind to prevail on its § 727(a)(2) claim or its § 727(a)(4) claim. Finally, Sethi argued that Wells Fargo could not demonstrate that Sethi made a false oath within the narrow meaning of § 727(a)(4).

Sethi did not testify at the trial. Instead, the parties stipulated to the admission into evidence of the transcript from Sethi's deposition, as well as the transcript from Sethi's

6

examination at the § 341(a) meeting of creditors held in her first bankruptcy case. The parties also stipulated to the admission of all of Wells Fargo's other trial exhibits. Sethi did not offer any additional trial exhibits. Only one witness was called and testified at trial: a Wells Fargo employee, Dorothy Koster, who testified regarding the nature and extent of Sethi's obligations to the bank and the origination of those obligations.[3]

On June 14, 2013, after the completion of trial, the bankruptcy court orally announced its ruling. The court held that Sethi's discharge would be denied. The court did not specify on which claims it was finding in favor of Wells Fargo. Rather, the court's oral findings were limited to a handful of generalized statements regarding Sethi's conduct. The court twice stated that Sethi had not been honest with the court and three times stated that the evidence against her was overwhelming. The court also stated that Sethi "deliberately . . . hid assets that were security for the bank's loan" and that she filed her two bankruptcy cases and hid the bank's collateral in an effort to prevent Wells Fargo from realizing on "its security in the medical equipment of the debtor and the debtor's corporation." Tr. Trans. (June 14, 2013) at 4:19-24.[4]

---

[3]Koster's direct testimony was presented by declaration, but cross-examination and redirect examination were conducted live in court.

[4]Ultimately, after giving Sethi's counsel an opportunity to respond, the court further found that Sethi: "has hidden assets or put assets away out of the reach of creditors, and that was
continue...

7

The court further found that Sethi lied at the § 341(a) exam conducted in her first bankruptcy case: "Coming in to the first meeting of creditors and telling the trustee in bankruptcy that she doesn't know where the equipment was, when, in fact, she [k]new perfectly well where the equipment was and subsequently admits it." Tr. Trans. (June 14, 2013) at 5:10-14.

The bankruptcy court further found that Sethi made false and misleading statements in her second bankruptcy case. More specifically, the court pointed to the fact that, in her second bankruptcy case, Sethi belatedly admitted that her second bankruptcy petition was not signed by her and was filed by her non-attorney friend without Sethi even looking at it. And yet, the court noted, she presented the petition to the court as her own bankruptcy filing without advising the court of the true facts associated with the filing – facts that would have undermined any reliance on the schedules and statement of financial affairs that accompanied Sethi's second bankruptcy petition.

In the court's own words, it described Sethi's misconduct in this respect as follows:

> There is this other thing, you know, that she admits that her second bankruptcy petition was not signed by her. It was filed by a friend of hers, she didn't look at it, she didn't sign it, and yet she presents it to the court as her filing. That is just not acceptable to the court. That is clearly the very type of misconduct, I presume, is equivalent to having a debtor's discharge

---

[4]...continue
clearly done with the intent to delay a creditor, delay [Wells Fargo]." Tr. Trans. (June 14, 2013) at 6:4-6.

denied.

Tr. Trans. (June 14, 2013) at 5:1-9.

The bankruptcy court entered its order denying Sethi's discharge on June 20, 2013, and Sethi timely appealed on July 2, 2013.

**JURISDICTION**

Sethi argues that the bankruptcy court lacked jurisdiction. According to Sethi, because the property she allegedly concealed or allegedly failed to account for was property of her wholly-owned corporations and not property of the debtor or property of the bankruptcy estate, the bankruptcy court lacked jurisdiction to hear and determine Wells Fargo's adversary proceeding.

Sethi's jurisdictional argument lacks merit. She attempts to turn garden-variety substantive arguments into jurisdictional arguments by mis-characterizing as jurisdictional requirements substantive elements for claims under §§ 727(a)(2) and 727(a)(5). Contrary to Sethi's argument, the bankruptcy court's jurisdiction was based on 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(J). The latter two provisions, 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(J), expressly confer upon the bankruptcy court "core" bankruptcy jurisdiction over Wells Fargo's objection to discharge adversary proceeding. Bankruptcy jurisdiction is a creature of statute. See Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1284-85 (9th Cir. 2013). Sethi has not articulated any reason why we should not apply the above-cited jurisdictional provisions in accordance with their plain meaning. Nor are we aware of any such reason. Therefore, Sethi's jurisdictional argument fails.

This Panel has jurisdiction under 28 U.S.C. § 158. We acknowledge that the bankruptcy court's oral ruling and its order denying Sethi's discharge could have more precisely expressed the court's intent to fully dispose of the underlying adversary proceeding by explicitly identifying, addressing and disposing of each of Wells Fargo's three claims for relief. Nonetheless, in the final analysis, we are convinced that the bankruptcy court intended its order denying Sethi's discharge to be its final act in the matter and to fully adjudicate all of the issues raised therein. See generally Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007); Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir. 1990).

Under similar circumstances, the Ninth Circuit has determined a bankruptcy court's disposition to be sufficiently final to permit appellate review. See Retz v. Samson (In re Retz), 606 F.3d 1189, 1195 & n.5 (9th Cir. 2010) (reviewing merits of bankruptcy court's decision on § 727 claims where bankruptcy court "found it unnecessary" to decide § 523 claims in light of its granting relief on the § 727 claims); see also U.S. v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1361 (9th Cir. 1986)(even though district court's ruling did not explicitly address all claims asserted in the litigation, holding that court's explicit ruling as a practical matter effectively "rendered moot" all claims not explicitly disposed of, so court of appeals had jurisdiction to review the district court's

10

ruling).[5]

Therefore, we have jurisdiction to consider the merits of this appeal.

**ISSUE**

Did the bankruptcy court commit reversible error when it denied Sethi a discharge?

**STANDARDS OF REVIEW**

In objection to discharge litigation, we review de novo the bankruptcy court's legal conclusions, and we review for clear error the bankruptcy court's factual findings. See In re Retz, 606 F.3d at 1196. When our examination requires us to review the bankruptcy court's application of the facts to the law, we typically review that application de novo. See id.

**DISCUSSION**

Our resolution of this appeal hinges on the sufficiency of the bankruptcy court's findings of fact. Civil Rule 52, which is made applicable in adversary proceedings by Rule 7052, requires bankruptcy courts after conducting a bench trial to make both findings of fact and conclusions of law. The Civil Rule provides in relevant part:

> (1) In General. In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

Civil Rule 52(a)(1).

---

[5]To the extent the bankruptcy court's decision could be construed as being interlocutory, we hereby grant leave to appeal pursuant to Rule 8003(c).

11

The bankruptcy court's findings are sufficient for purposes of Civil Rule 52(a)(1) if they "indicate the factual basis for its ultimate conclusions." Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001)(citing Vance v. Am. Haw. Cruises, Inc., 789 F.2d 790, 793 (9th Cir. 1986)). When the bankruptcy court does not provide sufficient findings, we may vacate and remand for further findings. First Yorkshire Holdings, Inc., v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012).

Even so, we need not vacate and remand based on conclusory or sparse findings if our review of the record, in conjunction with the available findings, provides us with a full understanding of the issues on appeal. Simeonoff, 249 F.3d at 891 (9th Cir. 2001); Jess v. Carey (In re Jess), 169 F.3d 1204, 1208-09 (9th Cir. 1999); Swanson v. Levy, 509 F.2d 859, 860-61 (9th Cir. 1975).

With these principles in mind, we turn our attention to the bankruptcy court's ruling. The most specific and helpful of the bankruptcy court's findings relate to § 727(a)(2), which provides that the bankruptcy court must grant the debtor a discharge unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A) **property of the debtor**, within one year before the date of the filing of the petition; or
>
> (B) **property of the estate**, after the date of the filing of the petition[.]

12

(Emphasis added.)  Generally stated, to support a denial of discharge under § 727(a)(2), a creditor or other interested party must prove: "'(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'"  In re Retz, 606 F.3d at 1200 (quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)).

The bankruptcy court unequivocally and explicitly found that both the disposition element and the intent element were present here.  The court stated in its oral ruling that Sethi deliberately concealed Wells Fargo's collateral with the intent and for the purpose of hindering its debt collection efforts. Moreover, these findings were sufficiently supported by evidence in the record, and we cannot conclude that they were clearly erroneous.

Nonetheless, Sethi has argued that, for a disposition of assets to implicate § 727(a)(2), the assets must have been the debtor's property or property of the estate.  Because the assets she permitted to be moved to storage or moved to her home were assets of her incorporated medical practice or her incorporated medical spa, she reasons, her disposition of these assets does not satisfy § 727(a)(2)'s requirements.

We agree with Sethi to a point.  The plain language of the statute supports her legal proposition that the assets disposed of must have been her assets, rather than property of one of her corporations.  If Congress had wanted to include within the scope of § 727(a)(2) property of another legal entity, it could have so

13

stated. But it did not do so. California law recognizes the separateness of corporate assets and liabilities. See Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538 (2000). And so have the better-reasoned federal cases interpreting the scope of § 727(a)(2). See, e.g., MCorp Mgt. Solutions, Inc. v. Thurman (In re Thurman), 901 F.2d 839, 841 (10th Cir. 1990); Ne. Neb. Econ. Dev. Dist. v. Wagner (In re Wagner), 305 B.R. 472, 475-76 (8th Cir. BAP 2004); Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner), 479 B.R. 746, 761-62 (Bankr. E.D. Tenn. 2012); Miller v. Scott (In re Scott), 462 B.R. 735, 741-42 (Bankr. D. Alaska 2011).

While unpublished, our prior decision in Hoffman v. Bethel Native Corp. (In re Hoffman), 2007 WL 7540947 (9th Cir. BAP 2007), is instructive. There, we upheld the bankruptcy court's denial of the debtor's discharge under § 727(a)(2) even though the property the debtor transferred belonged to his incorporated property management company. Id. at **5-6. However, our decision hinged on the bankruptcy court's finding that the debtor and his wholly-owned corporation were alter egos. Because the bankruptcy court properly pierced the corporate veil, we reasoned, the court properly could determine that debtor's transfer of corporate property implicated § 727(a)(2). Id.

Here, in contrast, the bankruptcy court did not make the requisite alter ego findings, nor did Wells Fargo allege in its complaint or set out to prove at trial the requisite elements for piercing the corporate veil. On appeal, Wells Fargo for the first time claims that Sethi and her medical practice and her medical spa were all one in the same. We decline to address this

14

issue because Wells Fargo raised it for the first time on appeal, and the bankruptcy court had no opportunity to consider it. <u>See United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 270 n.9 (2010) ("We need not settle that question, however, because the parties did not raise it in the courts below."); <u>Scovis v. Henrichsen (In re Scovis)</u>, 249 F.3d 975, 984 (9th Cir. 2001) (stating court will not consider issue raised for the first time on appeal absent exceptional circumstances).

Consequently, Wells Fargo was entitled to prevail on its § 727(a)(2) claim only if it proved that the property Sethi concealed was her own property and not property of one of her corporations. The bankruptcy court found that Sethi hid "assets" and hid "the bank's collateral." The court further found that Sethi hid Wells Fargo's collateral with the intent and for the specific purpose of hampering Wells Fargo's "efforts to realize on its security . . . in the medical equipment of the debtor and the debtor's corporation."

We cannot tell from these findings whether the bankruptcy court intended to find that the property Sethi hid was her own property or property of one of her corporations. Put another way, we decline to read into the court's oral ruling an implicit finding regarding who specifically owned the concealed equipment – Sethi or one of her corporations. While the evidence in the record presented to us on appeal indicates that Sethi's incorporated medical practice purchased (and hence owned) the equipment acquired with the proceeds from Wells Fargo's equipment loan, it is conceivable that somewhere in the record there might be sufficient evidence for the bankruptcy court to find that

15

Sethi, rather than one of her corporations, owned at least some of the concealed equipment. We leave it to the bankruptcy court, in the first instance, to marshal the evidence and to make the factual determination of who specifically owned the concealed equipment.

Of course, if the bankruptcy court on remand based on the evidence presented does not find that Sethi personally owned some of the concealed equipment, then it should rule against Wells Fargo on its § 727(a)(2) claim.

Similar to its § 727(a)(2) claim, Wells Fargo's § 727(a)(5) claim hinged on whether Sethi or one of her corporations owned the assets in question. Under § 727(a)(5), the bankruptcy court must deny the debtor's discharge if he or she "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets **to meet the debtor's liabilities**." (Emphasis added.) Thus, To prevail on this claim, Wells Fargo needed to prove:

> "(1) debtor at one time, not too remote from the bankruptcy petition date, **owned identifiable assets**; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets."

In re Retz, 606 F.3d at 1205 (emphasis added) (quoting Olympic Coast Invest., Inc. v. Wright (In re Wright), 364 B.R. 51, 79 (Bankr. D. Mont. 2007)).

The bankruptcy court did not make findings regarding any of the § 727(a)(5) elements. On remand, it should do so. In addition, for the same reasons we held above that the bankruptcy court needs to make findings regarding who owned the concealed

16

equipment for purposes of § 727(a)(2), we similarly hold that, for purposes of § 727(a)(5), the bankruptcy court needs to make findings regarding who owned the assets that Sethi allegedly failed to account for – Sethi or one of her corporations.

We next turn to Wells Fargo's § 727(a)(4)(A) claim.  The relevant part of the statute provides: "The court shall grant the debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account . . . ."  § 727(a)(4)(A).  To prevail on this claim, Wells Fargo needed to demonstrate that: "'(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'"  In re Retz, 606 F.3d at 1197 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)); see also Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir.2009) (citing same factors).

The bankruptcy court here did not specifically recite these factors in its ruling, nor did it make explicit findings as to each of these factors.  Even so, the record reflects that there was no dispute or confusion regarding the applicable factors.  In their respective pretrial briefs, both Wells Fargo and Sethi cited the same factors as enunciated in In re Retz and In re Khalil.

Additionally, most of the elements were established by Sethi's own admissions – admissions she neither recanted nor otherwise distanced herself from.  For instance, in her deposition testimony, which was accepted into evidence at trial,

17

Sethi admitted that she did not read or sign or even see her second bankruptcy petition and schedules before her friend filed them on her behalf in August 2010. Yet Sethi filed a declaration under penalty of perjury in October 2010 in which she adopted the August 2010 petition and schedules as her own and led her creditors and the court to believe that she reviewed, signed and filed these documents. Sethi did not file corrected and amended schedules until February 2011, six months after the filing of her second bankruptcy case and four months after she adopted the schedules as her own. Even a quick comparison between her August 2010 schedules and her February 2011 amended schedules reveals that the August 2010 schedules were inaccurate and incomplete.

Untrue statements in a declaration signed by the debtor under penalty of perjury and submitted to the court qualify as a false oath for purposes of § 727(a)(4)(A). Abbey v. Retz (In re Retz), 438 B.R. 237, 301 (Bankr. D. Mont. 2007), aff'd, 2008 WL 8448824 (9th Cir. BAP 2008), aff'd, 606 F.3d 1189 (9th Cir. 2010). Given the nature of the statements in her October 2010 declaration and her later admissions, Sethi has not and cannot legitimately dispute that she knowingly made false statements in connection with her second bankruptcy case specifically regarding the circumstances surrounding the commencement of the case.

Nor can Sethi cast legitimate doubt on the materiality of her false and misleading statements. Materiality for purposes of § 727(a)(4)(A) is broadly conceived and includes, among other things, "[a]n omission or misstatement that 'detrimentally affects administration of the estate.'" In re Retz, 606 F.3d at

18

1198 (quoting Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)). Disclosure of the true facts concerning the commencement of Sethi's second bankruptcy case – that Sethi did not prepare, sign, file or even look at her petition and schedules before they were filed by her non-attorney friend – would have completely undermined the reliability of her bankruptcy petition and schedules.

Put another way, the false and misleading statements contained in her October 2010 declaration led her creditors and the court to incorrectly believe that the petition and the schedules originally filed in her second bankruptcy case had at least some measure of reliability. As such, these statements were wholly at odds with the fundamental purpose underlying § 727(a)(4)(A): "to insure that the trustee and creditors have accurate information without having to conduct costly investigations." In re Retz, 606 F.3d at 1196; see also Searles v. Riley (In re Searles), 317 B.R. 368, 378 (9th Cir. BAP 2004) ("the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs.")

Nonetheless, there are two significant obstacles that prevent us, without more specific findings, from upholding the bankruptcy court's § 727(a)(4)(A) ruling. The first obstacle concerns the false statements that Sethi made at the first meeting of creditors in her first bankruptcy case. While these false statements might be probative on the issue of Sethi's intent, they are not, in and of themselves, false oaths for purposes of § 727(a)(4)(A). The plain language of the statute

19

makes clear that only statements made in her current bankruptcy case are actionable under § 727(a)(4)(A). In this regard, we find persuasive the analysis and holding of <u>Micoz v. Carter (In re Carter)</u>, 125 B.R. 631, 634 (Bankr. D. Utah 1991) (holding that false statement and schedules in first bankruptcy case were not actionable under § 727(a)(4)(A) in the debtors' second bankruptcy case).

From the limited nature of the bankruptcy court's findings, it is impossible for us to tell whether the bankruptcy court relied on Sethi's misstatements in the first case merely in considering Sethi's intent or whether the court improperly relied on those statements as a false oath for purposes of § 727(a)(4)(A).

On the other hand, Sethi's false and misleading statements in her October 2010 declaration regarding the commencement of her second bankruptcy case may suffice as the requisite false oath. We leave it to the bankruptcy court, on remand, to explicitly state whether it was the October 2010 declaration that the court relied upon for purposes of ruling in favor of Wells Fargo on its § 727(a)(4)(A) claim for relief.

The second obstacle to our upholding, without additional findings, the bankruptcy court's § 727(a)(4)(A) ruling concerns the issue of intent. Because of the gravity and practical effect of denying a debtor his or her discharge, the burden of proving the requisite fraudulent intent is a heavy one. In proving fraudulent intent, Wells Fargo needed to show that Sethi (1) made the false statements, (2) at the time she knew they were false, and (3) that she made them with the intent to deceive and for the

20

purpose of deceiving her creditors. In re Retz, 606 F.3d at 1198-99. The evidence of fraudulent intent typically is circumstantial and may include (but cannot be limited to) proof of a reckless indifference or disregard for the truth. Id. at 1199 (citing In re Khalil, 379 B.R. at 173-75).

While the first two intent elements (false statements and knowledge) are evident from Sethi's admissions, we decline to read into the record a finding that Sethi included false and misleading statements in her October 2010 declaration with the intent to deceive and for the purpose of deceiving her creditors.

Retz, 606 F.3d at 1198-99, and Khalil, 379 B.R. at 173-77, when read together, provide a roadmap of factors and circumstances that the bankruptcy court can and should consider in determining the debtor's state of mind for purposes of ruling on a § 727(a)(4)(A) claim. Because the bankruptcy court is in the best position to marshal the available facts relevant to Sethi's state of mind and to render in the first instance a finding regarding her intent, the better practice is for us to remand to permit the bankruptcy court to make the necessary intent finding.

Sethi also argues that the bankruptcy court abused its discretion by denying her request for an extension of time to file a closing brief. At the conclusion of the presentation of evidence at trial, both parties agreed to a timetable for filing closing briefs and to a hearing date of June 14, 2013, for the court to announce its final ruling. Apparently, Sethi's counsel was unable to comply with the agreed-upon deadline for filing Sethi's closing brief and, instead of submitting the closing

21

brief when due on June 6, 2013, submitted an untimely written extension request on June 12, 2013, two days before the final hearing.

At the time of the final hearing, the court denied the extension request. The court noted that Sethi previously had been granted more than one lengthy continuance of the trial and that the court previously had ruled that "enough is enough". The court further commented that Sethi's request to continue the hearing for the court to make its final ruling so that Sethi could have more time to file a closing brief was simply "too little, too late." The court proceeded to rule against Sethi on the merits, effectively denying the extension request.

In light of our decision that the bankruptcy court's denial of discharge must be vacated and this matter remanded for further findings, it is unnecessary for us to decide whether the bankruptcy court abused its discretion in denying Sethi an extension of time to file a closing brief.

## CONCLUSION

For the reasons set forth above, we VACATE and REMAND for the bankruptcy court to make further findings as discussed in this decision.